In re Kenneth B. WINTERS, Debtor.

Herb HARRIS, Trustee, Plaintiff,

v.

Kenneth B. WINTERS, Defendant.

**Bankruptcy No. 80–01464–BKC–SMW.
Adv. No. 81–0090–BKC–SMW–A.**

United States Bankruptcy Court,
S. D. Florida.

June 29, 1981.

Gary J. Rotella, Tamarac, Fla., for plaintiff.

Charles D. Franken, Beyer, Lerner and Puder-Harris, Ft. Lauderdale, Fla., for defendant.

Herb Harris, Hollywood, Fla., for trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause having come on to be heard upon plaintiff's complaint seeking denial of discharge, pursuant to Section 727 of the United States Bankruptcy Code, and the Court, having heard the testimony and examined the evidence presented, having observed the candor and demeanor of the witness, having considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

This Court has jurisdiction of the parties and the subject matter.

The plaintiff, Herb Harris, is duly qualified and acting trustee of the debtor who is the defendant in this proceeding. The complaint upon which this matter was tried was brought on two (2) grounds, as follows:

A. The debtor failed to keep or preserve sufficient books, records, documents, and papers from which his financial condition or business transactions might be ascertained; and

B. The debtor has filed false schedules in this proceeding.

The debtor, Kenneth B. Winters, was employed as an associate by Horizon Associ-ates, Inc., at the time of the filing of the bankruptcy, a business brokerage firm which advertises, sells and solicits purchasers of businesses. From 1974 through 1977 the debtor's statement of financial affairs reflects that he was the president of Winters and Company, Inc. and its wholly owned subsidiaries. Additionally, in 1977 he was employed as consultant to Jesup Lamont Capital Markets, Inc. and from the period of 1977 through 1979 he acted as president of Imperial Mortgage Corporation. Despite the representations on the debtor's statement of financial affairs the Court finds, from the debtor's testimony at trial and at the taking of his 205 Examination, that he had been actively involved in at least seven corporations, or subsidiaries, within the six years immediately preceding the filing of the bankruptcy petition, most of whose names were not listed on the statement of financial affairs.

With regard to the first ground for denial of the debtor's discharge as alleged in plaintiff's complaint, the Court finds that in response to inquiry on the statement of financial affairs as to whether the debtor kept books of account or records relating to his affairs within the two years immediately preceding the filing of the original petition, the debtor answered "NONE". Additionally, the Court finds that the debtor was asked at the 205 Examination, as well as several times during trial whether he had read the petition, statement of financial affairs and accompanying schedules that were prepared by his attorneys prior to his signing the same and, on all occasions, he answered in the affirmative and stated that the information contained therein was true and correct to the best of his knowledge.

The Court finds that at the 205 Examination the debtor failed to produce any personal books and records for the year immediately preceding the filing, with the exception of twenty money orders made on American National Bank and Trust Company between September 17, 1980 and January 7, 1981. (The original petition was filed on November 10, 1980.) The debtor admitted both at the 205 Examination and at the trial that no books of account or records

relating to his affairs were kept from November 1979 to September 1980. The debtor did not satisfy the Court in explaining why he failed to keep or preserve books and records for the period. His level of noncompliance with the trustee's inquiry into this area is overwhelming, especially in light of the debtor's long history of specialized experience in government bonds, municipal bonds, corporate bonds and banking practices, areas wherein proper and effective book and record keeping are of essential importance. Furthermore, the Court finds that the trustee has been seriously handicapped in this case as a result of the debtor's failure to keep and preserve adequate business records.

The Court finds that the debtor filed a false statement of financial affairs in these proceedings. The debtor's statement reflects that no income was received from the debtor's trade or profession during each of the two years immediately preceding the filing of the original petition. However, copies of the debtor's form 1040 U.S. Individual Income Tax Returns for the years 1979 and 1978 were produced at the 205 Examination and attached to the transcript of the 205 Examination as plaintiff's Exhibit "No. 1" and "No. 2" respectively, and reveal substantial amounts of income earned from his profession during the two years immediately preceding the filing. The Court finds that, the debtor's 1978 Return reflects business income in the amount of $78,000.00 and that the debtor received $526.45 of "other income" from the Capital National Bank Trustee Employees Profit Sharing Retirement Plan of Hibbard O'Conner & Weeks, Inc. in the year 1978 as evidenced by the 1040 Return, although the same was not reflected on the debtor's statement of financial affairs.

The statement of financial affairs reflects that the debtor did not maintain any bank accounts, either alone or jointly, within the two years immediately preceding the filing of the petition. Despite this representation, the Court finds that the debtor had access to at least six corporate bank accounts and one personal account maintained in his sole name, within the two years immediately preceding the filing of the petition.

The debtor additionally stated on his statement of financial affairs that there were no repayments on loans, in whole or in part, made during the year immediately preceding the filing of the original petition. In fact, the Court finds that the debtor had made his first and second mortgage payments on his home throughout the year immediately preceding the filing of the original petition.

The debtor's statement of financial affairs reflects that there were no transfers, either absolute or for the purpose of security, or any other disposition of real or tangible personal property made during the year immediately preceding the filing of the petition. Yet, the Court finds that the debtor's 1979 U.S. Income Tax Return, form 4797, documents the sale of various horses on December 15, 1979, evidencing transactions of the nature within the scope of inquiry during the year immediately preceding the filing of the petition.

The Court finds that the debtor filed false schedules in this proceeding. The debtor testified at trial as well as at the taking of his 205 Examination that he had failed to list his first and second mortgagees. Landmark First National Bank and Beneficial Finance Corporation, respectively, on the list of "creditors holding security" and represented in fact, with respect to the secured creditors that he had none.

Further, the Court finds that the debtor testified at trial that at the time of the filing of the original petition substantial balances existed on numerous major credit card accounts while none of these creditors were listed by the debtor on the list of "creditors having unsecured claims without priority". Additionally, unsecured loans from Anneli Porvol, in the amount of $6,000.00, Martin A. Lutzger, in the amount of $3,000.00 and Gulfstream Bank, in the amount of $5,000.00 were not scheduled.

■ The Court finds that these creditors were intentionally omitted from the schedules by the debtor. It is well recognized that under Bankruptcy Rule 108(a), the list of creditors should be a list of all creditors.

Bankruptcy Rule 108(a) "schedules and statement required" states in pertinent part: "The bankrupt shall file with the Court schedules of all his debts and all his property...". The Court finds, based upon the debtor's admissions at the 205 Examination and at trial that he owned extensive household goods, supplies and furnishings, in addition to wearing apparel and other personal property, none of which appeared on his list of personal property. The Court finds that the reference to "miscellaneous personal property" on the schedule of "property not otherwise scheduled" fails to describe this property and that the same was scheduled in a catch-all fashion by the debtor with the intent to defraud his creditors.

Based upon the foregoing facts, the Court finds that the debtor should be denied a discharge pursuant to Section 727(a)(3) of the Bankruptcy Code. The facts clearly demonstrate that the debtor, a man with highly specialized skills and expertise in the area of securities, brokeraging and banking, failed to keep or preserve recorded information, including books, documents, records and papers, from which his financial condition or business transactions might have been ascertained. The records maintained by this debtor are inadequate and fail to comply with the standards of Section 727(a)(3) of the Bankruptcy Code. The plaintiff has established a sufficient basis under Section 727(a)(3) of the denial of the debtor's discharge.

Additionally, the Court finds that the debtor's statement of financial affairs and accompanying schedules of liabilities and assets are completely devoid of the truthfulness and continuity which is required by Bankruptcy Rule 108(a). The Court finds that the debtor knowingly and fraudulently made false statements and filed false schedules, which he certified under penalty of perjury were true and correct.

Based upon the evidence and testimony presented, the Court finds that the debtor is not entitled to a discharge and the same is hereby denied. A separate judgment will be entered in accordance with these findings of fact and conclusions of law.