In re William H. JOHNSON, Justine J. JOHNSON, Debtors.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF RALEIGH, Plaintiff,

v.

William H. JOHNSON and Justine J. Johnson, Defendants.

Bankruptcy No. 86–02435–SN5. Adv. No. S–87–0152–AP.

United States Bankruptcy Court, E.D. North Carolina.

Feb. 19, 1988.

Donald A. Davis, Raleigh, N.C., for debtors/defendants.

Ronald H. Garber, Raleigh, N.C., for plaintiff.

## MEMORANDUM OPINION

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is an objection to the debtors' discharge filed on July 28, 1987, by First Federal Savings and Loan Association of Raleigh ("First Federal"), a creditor of the debtors. The trial of this adversary proceeding was held in Raleigh, North Carolina, on February 4, 1988.

## FACTS

The debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on October 27, 1986. The petition, schedules, and statement of financial affairs were all admitted into evidence without objection. The debtors' original schedules showed secured debts totalling $44,000.[1] The schedules showed that United Carolina Bank had a claim of $5,500.00 secured by a 1985 Oldsmobile with a market value of $6,000.00, that GMAC had a claim of $9,600.00 secured by a 1985 Buick with a market value of $9,000.00, and that United Carolina Bank had a second claim in the amount of $28,900 secured by a mobile home with a market value of $30,000.00. The debtors' schedules showed unsecured debt in the amount of $24,707.00; First Federal was listed as the largest unsecured creditor with a claim of $8,676.00. Based on the debtors' original schedule of assets, all of the debtors' property appears to either be encumbered or to qualify for exemption.

One of the allegations in the plaintiff's objection to discharge is that the debtors had overstated the amount of their secured debt. In August of 1987, after the objection to discharge had been filed, the debtors amended their schedule of secured debts both with respect to the amount owed and the value of the collateral. The debtors' amended schedules stated that $4,476.00 (rather than $5,500.00) was owed on the Oldsmobile which was shown to have a value of $6,175.00 (rather than $6,000.00), that $7,907.00 (rather than $9,600.00) was owed on the Buick which was shown to have a value of $7,875.00 (rather than $9,000.00), and that $11,802.00 (rather than the $28,900.00) was owed on the mobile home which was shown to have

1. Although the debtors' schedule of secured debts clearly shows three separate secured debts totalling $44,000.00, the total of secured debt listed at the bottom of that schedule is only $15,100.00. For some unexplained reason, the third debt listed on that schedule of $28,900.00 is not included in the total at the bottom of the schedule.

a value of $23,997.00 (rather than $30,-000.00).

The male debtor testified that he had calculated the secured debts listed on the original schedules by including all the interest he was expected to pay under the terms of the sales contracts. The amended schedules showed the "payoff" figures as of the date the petition was filed. Mr. Johnson also testified that the values given for the mobile home and the two automobiles in the original schedules had been estimates; Mr. Johnson indicated that the lower figures in the amended schedules represented what he believed at the time the amended schedules were filed to be a more accurate reflection of the value of the collateral. A sales representative from the company which sold the debtors their mobile home testified at the adversary proceeding that the NADA base value of the debtors' mobile home was $23,000.00 in October of 1986, but that the total value as of that date was approximately $30,000.00 when the value of optional equipment which came with the debtors' home was added. The male debtor indicated at the adversary proceeding that he did not question the $30,000.00 value assigned to the mobile home by the sales representative.

On their statement of financial affairs, the debtors answered "N/A" to the question of whether they had transferred any real property during the year immediately preceding the filing of the debtors' bankruptcy petition. (The male debtor indicated at trial that "N/A" stood for not applicable.) In fact, on November 29, 1985, a sale was closed on a house which had belonged to Mrs. Johnson prior to her marriage to Mr. Johnson for $67,900.00. After deductions for a mortgage and sale costs, the debtors received over $17,000.00 from this sale.[2] When Mrs. Johnson was cross-examined about the failure to disclose this transaction in the debtors' statement of financial affairs, she testified that it was her husband, not she, who had been involved in the preparation of the bankruptcy papers. Mr.

Johnson never offered any testimony as to why the transfer of this property was not disclosed; however, the debtors did introduce into evidence the sales contract which was dated October 21, 1985, several days more than a year prior to the bankruptcy filing. The debtors did not deny that title was not actually transferred until November 29, 1985, less than a year prior to the debtors' bankruptcy filing.

The debtors also answered "N/A" to the question on their statement of financial affairs of what proceedings they had previously brought under the Bankruptcy Code. In fact, Mr. Johnson had previously filed a bankruptcy petition on March 5, 1980. Mr. Johnson's only explanation for his failure to respond accurately to the question concerning prior bankruptcy filings on his statement of financial affairs was that he did not remember answering that question.

The debtors were also asked the following question on their statement of financial affairs: "What amount of income have you received from your trade or profession during each of the 2 calendar years immediately preceding the filing of the original petition herein?" The debtors' response was that Mr. Johnson had received $12,000.00 and Mrs. Johnson had received $11,000.00. The debtors were also asked what amount of income they had received from other sources during each of those two years and their response was "N/A". In fact, the debtors' 1985 North Carolina income tax return showed that Mr. Johnson earned $11,986 from wages, salaries, and tips, and that he received income from other sources such as dividends, interests, pensions, and business income in an additional amount of $3,599.00 for a total gross income of $15,-585.00. The 1985 tax return showed that Mrs. Johnson received $15,143.00 in wages, salaries, and tips, and that she received additional income of $2,210.00 from interest and other sources for a total gross income of $17,353.00. Similarly, the debtors' 1986 North Carolina income tax return showed

---

**2.** Although both Mr. and Mrs. Johnson's signatures appear on the sales contract for this property and both were present at the closing, it was not clear from the evidence presented whether the $17,000 was paid to both Mr. and Mrs. Johnson, or just to Mrs. Johnson. Both clearly had knowledge of the sale.

that Mr. Johnson had a total income of $16,008.00 and that Mrs. Johnson had a total income of $17,040.00.

Mrs. Johnson testified that her husband had been involved in the preparation of the tax returns and the bankruptcy petition, and that she did not know what was in them. Although Mrs. Johnson's signature does not appear on the copies of the tax returns which were admitted into evidence, her signature does appear at the end of the schedules and the statement of financial affairs. Mr. Johnson testified that the income figures that were provided on that statement were for net income, rather than gross income, and that he had deducted expenses he incurred in his job as a traveling salesman which were not reimbursable by his employer.

At the February 4th trial, the attorney for First Federal examined both debtors as to the disposition of approximately $46,-000.00 they received from two sales of residential property, one in June of 1985, and the other in November of 1985. The debtors purchased their mobile home in November of 1985; the total price was $33,100.00, and the debtors made a cash down payment of $21,100.00. The debtors also purchased one of their automobiles after the sales of their real property. Both debtors testified that they used the remainder of the proceeds to pay bills.

Based on the above evidence, the court finds by clear and convincing evidence that the debtors made false oaths with respect to material matters in their schedules and statement of financial affairs by understating both of their incomes, by failing to disclose Mr. Johnson's prior bankruptcy filing, by failing to disclose the transfer of Mrs. Johnson's house on November 25, 1985, and by undervaluing their assets and overstating the amount of their secured debt. The court also finds that the debtors acted knowingly and fraudulently within the meaning of 11 U.S.C. § 727(a)(4).

The court also finds that the plaintiff has not shown by clear and convincing evidence that the debtors transferred or concealed property with the intent to defraud creditors within the meaning of 11 U.S.C. § 727(a)(2) or that the debtors concealed, destroyed, or failed to keep or preserve financial records within the meaning of 11 U.S.C. § 727(a)(3).

## DISCUSSION AND CONCLUSIONS

One of the primary purposes of the bankruptcy act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." This purpose of the act has been again and again emphasized by the courts as being a public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns ... a new opportunity in life and a clear field for future effort....
*Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citations omitted). The discharge provided in 11 U.S.C. § 727 "is the heart of the fresh start provisions of the bankruptcy law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

The solicitude of Congress, however, stops at the debtor who does not measure up to that appealing image ["honest but unfortunate debtor"] and who has engaged in grossly irresponsible or fraudulent conduct, has been recalcitrant during the case or has overutilized the privilege.
Riesenfeld, *Creditors' Remedies and Debtors' Protection* 729 (3rd ed. 1979).

The burden of proof in any complaint objecting to a debtor's discharge is on the plaintiff. Bankruptcy Rule 4005; *In re Nye*, 64 B.R. 759 (Bankr.E.D.N.C.1986). Objections to discharge are to be construed liberally in favor of the debtor. *In re Epperson*, 45 B.R. 708 (Bankr.E.D.Tenn. 1985). The standard of proof to establish an exception to discharge of a debt under 11 U.S.C. § 523 is "clear and convincing evidence," *Matter of Bogstad*, 779 F.2d 370, 372 (7th Cir.1985), and this court believes that standard is applicable to objections to discharge as well.

■ The plaintiff's complaint alleges that grounds for denying the debtors' discharge exist under 11 U.S.C. § 727(a)(2), (3) and (4). Under 11 U.S.C. § 727(a)(2), a debtor is not entitled to a discharge if the debtor transferred or concealed property within one year before the filing of the debtor's bankruptcy petition with the intent to hinder, delay, or defraud a creditor. The plaintiff has not affirmatively shown a transfer or a concealment of property with the intent to defraud creditors. The debtors' testimony that they used the proceeds from the sale of their real estate to pay bills, many apparently for ongoing expenses, was not refuted by the plaintiff. The court finds that the plaintiff has not established by clear and convincing evidence grounds for denying the debtors' discharge under 11 U.S.C. § 727(a)(2).

■ 11 U.S.C. § 727(a)(3) provides that the court shall not grant a debtor a discharge if the debtor has concealed, destroyed, or failed to keep or preserve financial records unless such act or failure to act was justified. The plaintiff has not presented any evidence which would justify denying the debtors' discharge under 11 U.S.C. § 727(a)(3).

■ Under 11 U.S.C. § 727(a)(4)(A), discharge is to be denied if "the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account." In order to be denied a discharge under this section, the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with intent to defraud. *Williamson v. Fireman's Fund Insurance Co.*, 828 F.2d 249, 251 (4th Cir. 1987). The false oath must also have related to a material matter; this requirement is satisfied if the false oath bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. *Id.* at 251–52 (citing *In re Chalik*, 748 F.2d

616 (11th Cir.1984)). The purpose of § 727(a)(4)(A) is to insure that debtors provide reliable information to those with an interest in the administration of the debtor's estate. *In re Ingle*, 70 B.R. 979, 983 (Bankr.E.D.N.C.1987). Creditors are entitled to truthful statements in a debtor's statement of financial affairs so that they may conduct their own investigations of those affairs. *Id.* A material omission from a debtor's sworn statement of affairs or schedules presents grounds for denying a discharge under 11 U.S.C. § 727(a)(4)(A). *Id.* Because debtors are unlikely to acknowledge a fraudulent intent, the court may infer such intent from circumstantial evidence including a pattern of nondisclosure. *Williamson*, 828 F.2d at 252. A reckless indifference to the truth is sufficient to constitute the requisite fraudulent intent for denying a discharge under § 727(a)(4). *In re Ingle*, 70 B.R. at 983.

■ In the present case, there is no question that the debtors made false oaths in their schedules and statement of financial affairs by understating their income, failing to disclose a prior bankruptcy filing, failing to disclose a transfer of property,[3] and by undervaluing their assets and overstating the amount of their secured debt.

■ The court also holds that the materiality requirement of § 727(a)(4)(A) is satisfied on the facts of this case. A debtor's failure to disclose income may present grounds for denying discharge, *see In re Ailetcher*, 49 B.R. 681, 685 (Bankr.D.Hawaii 1985); *In re Winters*, 12 B.R. 129 (Bankr.S.D.Fla.1981), as may the overstatement of secured claims. *In re Cline*, 48 B.R. 581 (Bankr.E.D.Tenn.1985). A subsequent amendment of schedules to show the correct amount of secured claims does not expunge the falsity of the original schedules. *Id.* at 585. In *In re Ingle*, 70 B.R. 979 (Bankr.E.D.N.C.1987), this court held that the debtor's failure to disclose the sale of real estate for $52,000.00 presented grounds for denying the debtor's dis-

**3.** The court holds that the question on the debtors' statement of financial affairs asking whether any property transfers had been made during the year immediately preceding the filing of the debtors' bankruptcy petition requires debtors to disclose sales which were closed within the one year period even if the sales contract was signed outside of the one year period.

charge, citing *In re Cook*, 40 B.R. 903 (Bankr.N.D.Iowa 1984), in which a discharge was denied under § 727(a)(4) because of the debtor's failure to disclose a $5,000.00 sale of real estate. This court noted in *Ingle* that the failure to disclose a property transaction justifies the denial of the debtor's discharge even if no detriment to creditors resulted from the falsehood. Although the court has found no cases in which a discharge was denied because of a debtor's failure to disclose a prior bankruptcy, the court believes that such an omission is also material in that it hinders the ability of the trustee and creditors to fully investigate the debtor's conduct.[4] Knowledge of a debtor's prior bankruptcy filing might suggest to the trustee or a creditor the need for a closer scrutiny of the debtor's financial affairs.

Finally, the court finds by clear and convincing evidence that the debtors acted fraudulently in making false oaths in connection with their bankruptcy case. If the debtors' overstatement of the amount of their secured debt and undervaluation of their mobile home had been the only false statements in the debtors' schedules and statement of financial affairs, the court might be inclined to find that those false statements were the result of honest mistakes. However, as in *Williamson*, 828 F.2d at 252, the court finds the large number of false oaths made by the debtors in this case to be significant. In *Williamson*, the Fourth Circuit noted that the effect of three false oaths by the debtor was to conceal a pattern of gratuitous transfers of property by the debtor to his fiancee. In the present case, the effect of the debtors' false oaths was to minimize the likelihood that it would be discovered that the debtors' position that no assets were available for distribution to unsecured creditors was false. Based on this pattern, the court finds that the debtors knowingly and fraudulently made false oaths in connection with their case. Even if the debtors' over-

stating the amount of their secured debt and understating the value of their mobile home which secured one of those debts was the result of an honest mistake, the court finds that the debtors acted knowingly and fraudulently in understating their income, failing to disclose a transfer of Mrs. Johnson's house, and in failing to disclose Mr. Johnson's prior bankruptcy filing.

The court cannot accept Mrs. Johnson's argument that her discharge should not be denied because she had simply signed the bankruptcy documents without reading them. It has been held that it is no defense to an objection to discharge that one relied on the advice of counsel when the questions which were falsely answered did not require professional assistance in order to be answered truthfully. *In re Ingle*, 70 B.R. at 984; *In re Ailetcher*, 49 B.R. at 685. And the First Circuit, in rejecting a reliance on the advice of counsel defense to an objection to discharge, has stated that "a debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *In re Tully*, 818 F.2d 106, 111 (1st Cir.1987). There was no evidence presented that, had Mrs. Johnson read the schedules and statement which she signed, she would have been unable to easily ascertain without Mr. Johnson's assistance that the statements with respect to her income and transfer of her property were incorrect. A debtor should not be able to evade responsibility for false statements which she has made under oath by claiming reliance on her spouse any more than she should be able to claim reliance on advice of counsel when it is within the debtor's ability to recognize the falsity of the statements she is attesting to. Because there was no evidence presented that Mrs. Johnson's health prevented her from reading the schedules and statement she signed or that her will was overborne by her husband, the court believes that the facts of

---

4. Under 11 U.S.C. § 727(a)(8), a debtor is not entitled to a discharge if the debtor had previously been granted a discharge in a prior chapter 7 case commenced within six years before the date of the filing of the second bankruptcy

petition. Section 727(a)(8) is not applicable in this case because Mr. Johnson's prior bankruptcy petition was filed on March 5, 1980, more than six years before his second petition was filed on October 27, 1986.

this case are distinguishable from those in *In re Glickman,* 64 B.R. 616 (Bankr.S.D. Fla.1986) and *In re Gonday,* 27 B.R. 428 (Bankr.M.D.La.1983).

A judgment denying the debtors' discharge shall be entered in accordance with this opinion.