In re Thomas E. WARD, Jr., and Nancy C. Ward, his wife t/a Rosewood Farm Manor, t/a Tom Ward Rental, Debtors.

EQUIBANK, formerly Equibank, N.A., Plaintiff,

v.

Thomas E. WARD, Jr., and Nancy C. Ward, his wife t/a Rosewood Farm Manor, t/a Tom Ward Rental, Defendants.

Bankruptcy No. 87–2316.
Adv. No. 88–0059.

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 2, 1988.

See also 88 B.R. 727.

James C. Warmbrodt, Joseph E. Fieschko, Jr., Pittsburgh, Pa., for debtors.

James F. Grenen, Kincaid & McGrath, P.C., Pittsburgh, Pa., for plaintiff.

Carlota M. Bohm, Schaffler & Bohm, Pittsburgh, Pa., Chapter 11 Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is Plaintiff's Complaint Objecting To Debtor's Discharge, pursuant to § 727 of the Bankruptcy Code.[1] Specifically, Plaintiff contests Debtor's discharge under §§ 727(a)(4) and (a)(5), asserting that Thomas E. Ward, Jr. and Nancy C. Ward knowingly and fraudulently made numerous false oaths and accounts, and that they have failed to explain the loss of assets which constitute property of the estate. Prior to trial Thomas E. Ward, Jr. acknowledged the charges and stipulated to the entry of an Order denying his discharge. A trial on the merits as they relate to Nancy C. Ward was held wherein testimony was taken, and the parties have had the opportunity to provide post-trial briefs. Based upon same, and this Court's further research, we find that the Plaintiff has failed to meet its burden of proof, and determine that the Debtor, Nancy C. Ward, is entitled to her discharge.

## FACTS

Debtors filed a Chapter 11 bankruptcy petition on August 3, 1987. Within days Plaintiff filed a Motion to Convert the case to a Chapter 7 liquidation, or in the alternative, for the appointment of a Chapter 11 Trustee. On October 6, 1987, a Chapter 11 Trustee was appointed.

The first meeting of creditors began on October 22, 1987, and was continued to November 20, 1987. During the hiatus, on November 4, 1987, Debtors filed their First Amended Schedules, Statement of Intention, and Statement of Financial Affairs. The continued first meeting convened on November 20, 1987; however, due to defective notice by Debtors' counsel, the meeting was rescheduled for December 11, 1987. A creditors committee was also appointed on November 20, 1987. On the day of the rescheduled creditors meeting, Debtors filed their Second Amended Schedules, Statement of Intention, and Statement of Financial Affairs.

The case was converted to a Chapter 7 liquidation on June 28, 1988, and a new creditors meeting was set for August 10, 1988. Said meeting was again postponed, until September 21, 1988. On September 27, 1988 Debtors filed their Third Amended Schedules and Statement of Financial Affairs.

Nancy Ward testified at trial that she had not read the petition before signing it; her husband testified that she signed the form in blank. Mrs. Ward stated that she provided none of the information included on any of the documents filed with this Court. In fact, Nancy Ward had no personal contact with bankruptcy counsel until she attended her first creditors meeting. Mrs. Ward further testified that she similarly signed all of the relevant loan documents, assignments, deed transfers, etc., at the direction of her husband, and without any prior examination of their contents; she maintained she was not allowed to ask questions and was merely directed to sign her name. Mrs. Ward's testimony, which this Court determines to be credible, indicated that she was neither consulted nor included in any discussions relating to the business or personal finances. She explained that such matters were beyond her comprehension, and that she would not have understood the Schedules if she had

---

1. Plaintiff originally brought this Complaint on two (2) Counts. Count I, relating to Discharge-ability of a certain debt under § 523 of the Code, was withdrawn prior to trial.

had an opportunity to review them in completed form. Debtor is aware that she owns certain real estate with her husband, and that some of their jointly held real estate was transferred to her son in settlement of a divorce proceeding.[2] However, Mrs. Ward testified she has no apparent understanding of the mechanisms by which such transfers occur, and admits that aside from her understanding regarding the residence and farm, she has no idea which properties are still owned by her and her husband and which were transferred. Mrs. Ward's total relationship. to the business consisted of her employment as a sales clerk in her husband's grocery store. She played no part in the operation of the business and was excluded from a review of its working books and records.

Mrs. Ward was questioned specifically in relation to a list of equipment and machinery used in the business operations, which items were inexplicably lost prior to the filing. From her testimony it is clear that she never knew of the existence of this equipment.

## ANALYSIS

We begin by addressing the procedural impropriety of Plaintiff's reliance on statements made at the creditors meetings. Direct testimony relating to said meetings was not adduced at trial. The Bankruptcy Reform Act of 1978 specifically removed judges from the position of administration regarding creditors meetings. One of the major reasons for said removal is protection of impartiality. A § 341 meeting is conducted in much the same way one conducts a fishing expedition—throwing out baited lines numerous times in the hope of reeling in something of substance. No formal rules of evidence are employed.

It is not appropriate for a judge to access these meetings or tapes thereof; the judge must have an unbiased opportunity to view the witness' credibility and to give opposing counsel an opportunity to object to

individual questions on evidentiary grounds.

Although the parties stipulated to this Court's taking of judicial notice regarding the proceedings in this bankruptcy case, judicial notice cannot be taken of hours of tape recorded material. Plaintiffs have a duty to provide their evidence with some specificity. It is no more appropriate to present this Court with hours of tape recorded evidence and expect us to listen to them in their entirety than it would be to present an entire deposition transcript and expect the Court to read it completely in order to glean Plaintiff's case. Moreover, as the witness was available and present in Court, it would not be appropriate to use prior proceedings as testimony; rather, records of prior testimony should be used to establish or refute the witness' credibility. Federal Rules of Evidence 804(b)(1).

Returning to the substantive issues, this Court has previously held that Section 727 of the Bankruptcy Code is the core of the fresh start provision in bankruptcy law, permitting the honest debtor to receive a new start in life free from the manacles of debt. *In re Roberts*, 81 B.R. 354 (Bankr. W.D.Pa.1987); *Matter of Brooks*, 58 B.R. 462 (Bankr.W.D.Pa.1986). A denial of a discharge is an act of mammoth proportions, and must not be taken lightly. *In re Tarle*, 87 B.R. 376 (Bankr.W.D.Pa.1988); *In re Goldstein*, 66 B.R. 909 (Bankr.W.D. Pa.1986).

Plaintiff has sought to deny Debtor's discharge under §§ 727(a)(4) and (5), which state in pertinent part:

(a) The court shall grant the debtor a discharge, unless—

　(4) the debtor knowingly and fraudulently, in or in connection with the case—

　　(A) made a false oath or account;
　. . .

　(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets to meet the debtor's liabilities.

**2.** The divorce proceeding was withdrawn based upon the settlement. Nancy Ward testified that the transfer was made to provide for her son

and protect his interest against any claims by Mr. Ward's paramour and child born outside the marriage.

Pursuant to § 727(a)(4), two (2) elements must be proved in order for discharge to be denied:

(1) the debtor's oath must have been knowingly and fraudulently made; and

(2) it must have been related to a material fact.

*In re Tarle, supra; In re Roberts, supra; Matter of Brooks, supra.* The question in this case is whether Nancy Ward signed the various bankruptcy schedules and amendments, knowing they were fraudulent.

Several courts have denied discharges to debtors who have claimed that they did not read the schedules prior to signing, and therefore did not *know* they were making a false oath. *In re Tully*, 818 F.2d 106 (1st Cir.1987); *In re Johnson*, 82 B.R. 801 (Bankr.E.D.N.C.1988); *In re Mazzola*, 4 B.R. 179 (Bankr.D.Mass.1980) *remanded*, 23 B.R. 263 (D.Mass.1981). In *Tully, supra* at 111, the Court stated:

... a debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath.

*See also Johnson, supra* at 806.

These cases can be factually distinguished from the case at bar. In *Mazzola, supra*, the debtor/wife stated that she did not participate in the completion of the schedules and signed same without reading them. However, she was the party responsible for maintaining the finances for the family and their business. She was "... thoroughly conversant with the true facts". *Mazzola*, 4 B.R. at 181. Similarly in *Johnson, supra*, there was no evidence proffered that the debtor/wife would have been unable to comprehend the schedules if she had read them.

A relevant exception to this general rule was carved by the court in *In re Gonday*, 27 B.R. 428 (Bankr.M.D.La.1983). In *Gonday* the debtor/wife was discharged, on the grounds that the fraudulent oath which she made was the direct result of her husband's undue influence over her.

In the instant case Plaintiff's counsel asked Mrs. Ward directly if she had been under undue influence or had been coerced into signing the schedules and amendments by her husband. Although she stated she had not, it appears to this Court that undue influence and coercion can occur without forcing one's hand to paper or placing a gun to one's head, and did occur in this case. As the court stated in *Gonday, supra* at 432:

... She testified that she relied entirely on her husband and her lawyer to do whatever was necessary to process the bankruptcy ... Her answers were to the point, without recalcitrance nor evasion. The whole affair, for Mrs. Gonday, was simply a backseat trip, without control of either pilot or navigator.

Mrs. Ward is similarly situated. She did not conduct herself as one who is indifferent to the truth. Mrs. Ward would likely have cooperated completely at the outset, if in fact she had been given the opportunity. However, it is clear to the Court that she is dominated by her husband and that she acquiesced in all of his directions to sign various documents.

This Court's prior decision in *In re Roberts, supra*, is also distinguishable. Mrs. Roberts handled *all* of the family and business finances except investments. She did the bookkeeping and most if not all of the banking transactions. Mrs. Roberts was at least as culpable as Dr. Roberts, if not more so. In the present case we find Mrs. Ward to be the antithesis of Mrs. Roberts.

We also find Mrs. Ward guiltless in regard to Plaintiff's Objection to Discharge under § 727(a)(5), relating to numerous items of equipment and machinery used by one or more of the Debtor's businesses. Mrs. Ward testified that she did not know she owned any of the equipment identified. This testimony, if offered by a "woman of the 80's" might lack credibility. This testimony, offered by Mrs. Ward, is believable and accepted by the Court as true statements of fact. If she did not know she owned the equipment, she could not be expected to explain the loss or dissipation of same. Ethically and equitably Mrs.

Ward should not be censured by a denial of her discharge.

An appropriate Order will be entered.