**SPRINGMANN v. GARY STATE BANK et al.**

**In re BARGER.**

**Nos. 7675, 7676.**

Circuit Court of Appeals, Seventh Circuit.

Dec. 18, 1941.

Rehearing Denied Jan. 12, 1942.

Kenneth Call, Albert H. Gavit, Claude V. Ridgely, all of Gary, Ind., for appellants.

Henry G. Doherty, of Gary, Ind., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Defendants seek to reverse a judgment rendered against them in an action brought by the plaintiff, the trustee in bankruptcy of Ernest A. Barger, to recover assets fraudulently transferred and claimed to have belonged to the bankrupt. The case was tried by the court without a jury, who made special findings of fact and stated its conclusions of law thereon in favor of the plaintiff.

The controlling facts proved were that on October 10, 1936, Barger was the equitable owner of a tract of land in Gary, Indiana, which he sold to J. J. Realty Corporation,

receiving as part of the purchase price a note for $5,300, secured by a mortgage executed by the purchaser. Barger delivered this note to the defendant Bank and had it registered in the name of his sister, Chloe C. Hackett.

On February 10, 1937, Barger was also the equitable owner of two lots in Gary, Indiana, upon which he built a gasoline service station and leased it to the Pure Oil Company. The lease executed by his wife, Mabel L. Barger, granted Pure Oil an option to purchase. June 2, 1937, after the station had been erected, Barger owed $6,100 for the purchase price of the lots and for the construction of the station. Pure Oil exercised its option and Barger directed the Gary Land Company, holder of the legal title, to execute a deed to his mother, Carrie L. Barger, and she, on May 20, 1937, after receiving the legal title, executed a note for $12,650, secured by a mortgage upon the lots. The mortgage ran to the Gary State Bank as trustee and was registered on the Bank's trustee records May 21, 1937, by Davis, an attorney. June 2, 1937, Barger negotiated a loan of $6,000 from the Bank. The note for the loan was signed by Hackett and endorsed by Barger. Hackett knew nothing of the details concerning the loan; all that she did was to sign the note. To secure the loan of $6,000, the Realty and the $12,650 mortgages were given as collateral. The Bank made no inquiry as to what was Mrs. Hackett's interest in the $12,650. The Bank knew that the $6,000 so borrowed was used to pay the purchase price of the two lots and the construction cost of the gasoline station and the bank actually made payment thereof. After the Gary Land Company conveyed the lots to Carrie L. Barger, she and her husband conveyed the lots to Pure Oil and it assumed and agreed to pay the $12,650 note.

On June 5 or 6, 1937, Barger arranged to sell the $12,650 note to the Bank of Whiting. June 25, 1937, Mrs. Hackett came to the Bank and directed in writing that the $12,650 note be sold. The Bank sold the note as directed, received the proceeds, applied $5,833 to the $6,000 note and delivered its check to Hackett for $2902.09.

Ernest A. Barger filed his voluntary petition in bankruptcy on June 12, 1937, scheduling unsecured debts totaling $2,572,091. He was adjudicated a bankrupt on June 15, 1937, and plaintiff was duly ap-

pointed and qualified as trustee of his estate on August 2, 1937. November 18, 1937, Hackett delivered the Realty note and mortgage to the Bank in exchange for the real estate known as 1301 Madison Street, Gary, Indiana.

The District Court made a large number of separate findings. The court found as a fact that on October 17, 1936, Barger was insolvent and that defendant Hackett received the $5,300 Realty note without consideration, for the purpose of concealing Barger's ownership and with the intent to hinder, delay and defraud his creditors, and that the Bank knew that the $12,650 note and mortgage were the property of the bankrupt.

Upon 38 separate findings of fact the court stated its conclusions of law. It was of the opinion that the Realty note and the money collected by Hackett and the Bank after June 25 and October 15, 1937, respectively, were the property of plaintiff as trustee and that upon the sale of the $12,650 note, the net proceeds of $2,902.09 became the property of the plaintiff; it rendered a judgment that Chloe C. Hackett pay to the plaintiff $2,902.09 and $264.33 and that the Gary State Bank pay to plaintiff $2,902.09 and $2,378.13 plus any installments it received on the Realty mortgage after January 4, 1941 and that it deliver to the plaintiff the Realty note and mortgage.

■ At the outset we are met with the contention that the judgment must be reversed because at the time the action was commenced, there were no unpaid creditors of the bankrupt who had filed provable claims. The gist of the argument is that the trustee acts for the creditors, and if there be none when the trustee files or tries the case, there can be no recovery.

It appears that during the administration of the bankrupt's estate certain claims were filed and allowed which thereafter were settled and withdrawn. Among those claims were two judgments rendered against the bankrupt: one rendered on May 28, 1928, in favor of Don C. Wixon for $502.33 and the other rendered on June 26, 1933, in favor of Genevieve M. Barger for $2272. On the trial, plaintiff proved the judgments. It also appears that after the filing of the complaint in this case, other claims were filed and allowed, i. e., claim of Harold Lower for $2,486 and claim of Slick's Gary Laundry for $1,041. Under this state of the record we do not think the contention is tenable.

■ By the Bankruptcy Act, as amended, c. 575, § 70, subs. a, c, 52 Stat. 879–881, 11 U.S.C.A. § 110, subs. a, c, the trustee acquires title to the bankrupt's property as of the date of the bankruptcy and shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution returned unsatisfied. In other words, where a transfer is alleged to have been fraudulent as to creditors, and insolvency is alleged to have existed at the time, the trustee is in the position of a creditor who has proved by an execution returned unsatisfied that a deficiency of assets exists, Kraver v. Abrahams, D.C., 203 F. 782. Furthermore, § 57, sub. n of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. n, provides that after all claims filed have been paid in full, claims not filed within the time prescribed by the statute may be filed within such time as the court may fix, and if duly proved, shall be allowed against any surplus remaining.

We now proceed to consider the pivotal question in the case. It is insisted that the evidence does not warrant the findings that Hackett received the Realty note without consideration, for the purpose of concealing Barger's ownership and with the intent to hinder and defraud Barger's creditors, and that the Bank knew that the $12,650 note and mortgage were the property of the bankrupt.

■ In support of her contention counsel for Hackett points to Barger's and Mrs. Hackett's testimony that she paid Barger $2,500 for the Realty note and mortgage in the fall of 1936 and that she lent the bankrupt $2,750 in February, 1937. It is the duty of the trial court to find the facts by weighing all the testimony. But it is not bound to believe Barger's and Hackett's testimony. The testimony of a witness may be so inherently weak as to be unable to stand against the facts shown by other evidence and the inferences to be drawn therefrom, or it may be so inconsistent with other facts and circumstances as to have little or no weight. Their manner of testifying may have given rise to doubts as to their sincerity, creating the impression that they were giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to their statements,

although there be no adverse verbal testimony adduced. Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733, 35 L.Ed. 501; Hann v. Venetian Blind Corporation, 9 Cir., 111 F.2d 455; American Casualty, etc., v. Windham, 5 Cir., 107 F.2d 88, and Staudenmaier v. Johnson, 7 Cir., 117 F.2d 397.

It is true that the burden of proving fraud is upon the plaintiff and that it must be proved by clear and convincing evidence. The proofs, however, are not restricted to direct and positive testimony, since fraud may be deduced from acts and circumstances which frequently carry greater probative force than the direct testimony of many witnesses. The credibility of the witnesses, the inferences to be drawn from the testimony, and the weight to be given the evidence are purely questions of fact. We are not the triers of fact, but merely reviewers of the action of the trial court and in our investigation we are limited to an ascertainment of the existence of substantial evidence sufficient to support the findings and where there is any competent evidence to sustain the trial court's findings, they cannot be disturbed on appeal unless we can say they are clearly erroneous.

We have considered the evidence and are convinced it was sufficient to support the finding that Mrs. Hackett received the Realty note without consideration for the purpose of concealing Barger's ownership and with the intent to hinder and defraud his creditors.

The Bank contends that there is no proof that it knew that the $12,650 note and mortgage were the property of the bankrupt and counsel argues that whatever knowledge Attorney Davis had can not be charged to the Bank. Irrespective of whether the knowledge that Davis had concerning the transaction was imputable to the Bank, from all the evidence, oral and documentary, and the reasonable inferences flowing therefrom, we are of the opinion that the Bank had knowledge of the fact that Barger was the equitable owner of the gasoline service station and knew that Barger had directed the Gary Land Company to execute a deed to Carrie L. Barger without the payment of any consideration therefor and while Barger was insolvent, for the purpose of concealing Barger's ownership. The Bank also knew that Hackett was not on November 18, 1937 the owner of the Realty note and mortgage.

Consequently, we must conclude that the judgment of the District Court is sustained by the evidence. It must be affirmed.