In re Oswald GARCIA, Debtor.

The NEW WORLD MARKETING
CORPORATION, Plaintiff,

v.

Oswald GARCIA, Defendant.

Bankruptcy No. 86–02645F.
Adv. No. 86–1273F.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 20, 1988.

Penelope A. Davidoff, Phillips & Phelan, Philadelphia, for plaintiff, The New World Marketing Corp.

Richard B. Perlman, Norristown, Pa., for debtor/defendant, Oswald Garcia.

Christopher G. Kuhn, Philadelphia, Pa., Trustee.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

This adversary proceeding involves a creditor's request to have the debtor's chapter 7 discharge denied pursuant to 11 U.S.C. § 727(a)(2) and 727(a)(4). In a prior opinion reported at *In re Garcia*, 69 B.R. 522 (Bankr.E.D.Pa.) *aff'd.* 76 B.R. 68 (E.D. Pa.) *aff'd. mem.*, 838 F.2d 460 (3rd Cir. 1987), I addressed a discovery dispute between these parties. The merits of the proceeding are now before me.

### I.

The underlying facts involved here are not seriously disputed.[1] The debtor in this chapter 7 case, Oswald Garcia ("Garcia"), is an individual who was formerly employed by the plaintiff, The New World Marketing Corporation, ("New World"). At some point, the employment relationship between the parties apparently soured and Garcia was terminated from his position. New World then instituted suit against Garcia in state court in Pennsylvania to recover certain sums of money in excess of $200,000.00. Garcia responded with counterclaims in a total amount in excess of $700,000.00.[2] Upon the debtor's bankruptcy filing on May 29, 1986, New World filed a proof of claim in the amount of $225,922.50.[3]

New World also filed the instant complaint under 11 U.S.C. § 727.[4] Count I was brought pursuant to section 727(a)(2)(A) alleging that the debtor transferred certain property to his wife before the bankruptcy petition was filed with "intent to hinder, delay or defraud New World and ... other creditors." (Complaint at ¶ 15.) Count II was brought under section 727(a)(4)(A) alleging that the debtor knowingly or fraudulently signed an oath verifying his statement of financial affairs filed with this court. The statement allegedly failed to disclose the existence of certain property including an equitable interest in property owned by the debtor's wife, "bank accounts and safe deposit boxes" and the state court counterclaim.[5] (Complaint at ¶ 18–20).

At the hearing, in support of its claims, New World presented only the pleadings to the extent of admissions contained therein and certain deposition testimony of Garcia.

As to Count I, New World presented evidence that Tatiana Garcia, the debtor's wife, purchased property in Canada on June 26, 1980 to serve as a joint residence for herself, the debtor and their children. The property was titled solely in the name of Mrs. Garcia subject to a purchase money mortgage held by Canada Trustco Mortgage Company in the amount of $68,175.00. Mrs. Garcia then secured a second mortgage from Household Realty Corporation in the amount of $26,783.17 on May 13, 1981 and a third mortgage in the amount of $7,900.00 from Guaranty Trust Co. of Canada on December 17, 1982.[6] Mrs. Garcia obtained funds for the down payment on the house by selling a prior residence titled only in her name. At least a portion of the funds used to obtain the prior residence came from sale in 1974 of a residence owned by the Garcias jointly. For most of the period from 1980 to the present, the Canada property has served as the debtor's residence.

Subsequently, each of the mortgages was fully repaid by Mrs. Garcia or by the Garcias jointly. The parties agree that on February 14, 1985, the debtor wrote a check in the amount of $27,279.00 to satisfy the Household Realty Corporation mortgage which was drawn on a joint bank account into which Mrs. Garcia deposited all of her husband's pay checks. Similarly,

1. This opinion shall constitute the findings of fact and conclusions of law required by Bankr. Rule 7052.

2. Apparently, neither New World's claims, nor the counterclaims were liquidated prior to bankruptcy.

3. New World has not objected to the dischargeability of the claim pursuant to 11 U.S.C. § 523(a). The parties have agreed that this case has proceeded to this point as a no asset case. They thus agree that unless the trustee or some other party in interest identifies an asset and seeks to pursue it, there is no point in liquidating New World's proof of claim in this forum regardless of whether discharge is granted. (N.T. p. 118–119). Consequently, I will hold resolution of the proof of claim litigation in abeyance. Either party may seek to have it relisted if the appropriate circumstances arise.

4. The trustee was not a party and did not participate in this proceeding.

5. Count II of the complaint also includes an allegation that Garcia "grossly overstated" the amount of a potential personal injury liability which the debtor listed as "disputed/contingent" in the amount of $400,000.00 (Complaint at ¶ 22). No evidence was presented on this point.

6. In each case, the debtor cosigned some or all of the loan documents. Until the loans were ultimately repaid in a lump sum, the debtor's income was used to make monthly payments.

the Guaranty Trust Company mortgage was discharged by payment of $10,236.80 on April 19, 1985 by certified check from the same joint bank account. The parties also agree that on June 25, 1985 the Canada Trust purchase money mortgage was discharged by payment. It is undisputed that the source of the funds was the liquidation of a bank account held in Mrs. Garcia's name only. The parties do dispute, however, the source of the funds in Mrs. Garcia's account. The debtor testified that any money in the account came from a source other than himself.[7] New World would have me infer that the source of the funds in the account must have been the debtor insofar as Mrs. Garcia was not employed during the relevant period.

The only direct evidence of Garcia's income was Garcia's testimony that he earned approximately $17,000.00 in 1983, $25,000.00 in 1984 and $25,000.00 in 1985. During the entire period, the debtor claims that he had expenses of approximately $2,000.00 monthly. New World would have me infer that the debtor's income was greater during that period, based on records indicating that certain inventory was in Garcia's control and the amount of money remitted to New World does not fully jibe with the value of the inventory. New World argues as well that Garcia's credibility is undermined insofar as his income and expense figures would not have allowed Mrs. Garcia to save the money in the joint bank account necessary to allow repayment of the mortgages.[8]

In support of its allegations under Count II, New World asserts that Garcia has an ownership interest in the Canada residence which was not disclosed. It also presented unrebutted evidence that Garcia owns a safe deposit box and two bank accounts which were not listed in the debtor's sworn Statement of Financial Affairs. *See* Official Bankr. Form 7, question 4 ("Financial accounts, certificates of deposit and safe deposit boxes."); 11 U.S.C. § 521(1); Bankr Rule 1007. The debtor, of course, disputes his alleged ownership interest in the real estate, but admitted existence of the other assets at a deposition taken by New World and in the answer filed to the complaint. In addition, unrebutted evidence establishes that the existence of the state court counterclaim against New World was omitted from the debtor' scheduled assets. Little, if any, evidence was offered, however, by either party about the value of the respective assets.[9] In response, the debtor presented amended schedules which disclose the existence of the assets at the time of his initial filing. The amended schedules were not filed until on or about the date of the trial in this matter.

Having made a record on which both parties essentially agree upon many of the facts, the parties, of course, disagree on the appropriate inferences to be drawn from the record and on the requisite legal conclusions. I thus must review the evidentiary burdens applicable to 11 U.S.C. § 727 as well as the elements to which those burdens apply.

## II.

The relevant language of 11 U.S.C. § 727 reads as follows:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

\*     \*     \*     \*     \*     \*

7. Testimony about where, in fact, the money did come from was stricken as hearsay.

8. No evidence was presented as to whether the only source of funds in the joint bank account was Mr. Garcia's salary.

9. No evidence was presented to establish that the trustee is seeking to collect any assets in this case or that assets have been abandoned pursuant to 11 U.S.C. § 554.

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

Both 11 U.S.C. § 727(a)(2) and § 727(a)(4) are derived from the Bankruptcy Act, § 14c. Under § 14c, a significant and often litigated issue was allocation of the burden of proof. That issue was ultimately resolved by rule, specifically former Bankr. Rule 407, which made clear that the burden of proof applicable to a complaint objecting to a discharge was on the plaintiff. *See Matter of Decker*, 595 F.2d 185 (3rd Cir.1979) (upholding validity of Rule 407).

Current Bankr. Rule 4005 is virtually identical to former Rule 407 in stating that the burden is on the plaintiff in a proceeding brought under Section 727. *See 8 Collier on Bankruptcy* ¶ 4005 at 4005–1 to 4005–2 (15th ed. 1988) ("Collier"). Much less clear, however, is the question of the measure of evidence necessary to carry plaintiff's burden under 727(a)(2) and (a)(4). The following courts have concluded that the plaintiff need carry its burden only by a preponderance of the evidence. *Farmers Co-operative Association v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982); *In re Shults*, 28 B.R. 395, 396 (Bankr. 9th Cir.1983); *In re Parker*, 85 B.R. 384 (Bankr.E.D.Va. 1988); *In re Riso*, 74 B.R. 750, 757 (Bankr. D.N.H.1987); *In re Clausen*, 44 B.R. 41, 45 (Bankr.D.Minn.1984); *In re Gonday*, 27 B.R. 428, 432 (Bankr.M.D.La.1983). Other courts have concluded that clear and convincing evidence is required. *In re Johnson*, 82 B.R. 801, 804 (Bankr.E.D.N.C.1988); *In re Somerville*, 73 B.R. 826, 835 (Bankr. E.D.Pa.1987); *In re Booth*, 70 B.R. 391, 394 (Bankr.D.Colo.1987); *In re Woerner*, 66 B.R. 964, 971 (Bankr.E.D.Pa.1986) *aff'd.* C.A. 86–7324 (E.D.Pa. April 28, 1987); *In re Lineberry*, 55 B.R. 510, 511 (Bankr.W.D. Ky.1985); *In re Cohen*, 47 B.R. 871, 874 (Bankr.S.D.Fla.1985).

Those cases which have concluded that the applicable burden of proof under section 727 is by a preponderance of the evidence rely primarily on decisions under the Act, § 14c which concluded that the burden of persuasion necessary to deny a debtor's discharge under that section could be established by a mere preponderance of the evidence. *See In re Mascolo*, 505 F.2d 274, 276 (1st Cir.1974); *In re Robinson*, 506 F.2d 1184, 1187 (2d Cir.1974); *Union Bank v. Blum*, 460 F.2d 197, 200–201 (9th Cir. 1972). *See also* 12 *Collier on Bankruptcy*, ¶ 407.3 at 4–69 to 4–70 (14th ed. 1978).

Those cases which conclude that clear and convincing evidence is required rely primarily on a long line of decisions under both state and federal law which require an intermediate standard (usually stated as clear and convincing evidence) to establish fraud. *See generally*, 9 *Wigmore on Evidence* § 2498, at 424—425 (1981 edition) and cases cited therein. The underlying rationale of these fraud cases has always been that a finder of fact should not lightly conclude that an individual's conduct has been other than honest and scrupulous. *In re Locust Building Co.*, 299 F. 756, 765 (2d Cir.) *cert. denied*, 265 U.S. 590, 44 S.Ct. 635, 68 L.Ed. 1195 (1924); *In re Cohen.*

It is more established, although by no means settled, that proof by clear and convincing evidence is necessary to prove fraud under 11 U.S.C. § 523(a). *See, e.g., Matter of Von Horne*, 823 F.2d 1285, 1287 (8th Cir.1987); *In re Black*, 787 F.2d 503, 505 (10th Cir.1986); *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986); *Matter of Bogstad*, 779 F.2d 370, 372 (7th Cir.1985); *In re Martin*, 761 F.2d 1163, 1165 (6th Cir.1985); *In re Paolino*, 75 B.R. 641, 646 (Bankr.E. D.Pa.1987); *In re Woods*, 66 B.R. 984, 988 (Bankr.E.D.Pa.1986) (per Scholl, B.J.); *In re Emery*, 52 B.R. 68, 70 (Bankr.E.D.Pa. 1985) (per Goldhaber, Ch.B.J.); *In re Liberati*, 11 B.R. 54, 56 (Bankr.E.D.Pa.1981) (per King, B.J.). *See also In re Colasante*, 12 B.R. 635, 639 (E.D.Pa.1981) (requiring clear and convincing evidence under 17a(2) of the act, predecessor to § 523) (per Giles, D.J.); *In re Tomeo*, 1 B.R. 673, 677 (Bankr.E.D. Pa.1979) (same) (per Twardowski, B.J.); 3 Collier ¶ 523.08[5] at 523–50 [footnotes omitted]:

At the time of the Code's enactment in 1978, courts were holding that for purposes of bringing a debt within Section 17a(2) of the Bankruptcy Act of 1898 the

fraud had to be proved by clear and convincing evidence. The legislative history of section 523(a)(2) of the Code suggests that the burden of proof under the Code should be the same as the superseded section 17a(2).

But see, In re Daboul, 85 B.R. 197 (Bankr. D.Mass1988); In re Carr, 49 B.R. 208, 210 (Bankr.W.D.Ky.1985); In re Baiata, 12 B.R. 813, 817 (Bankr.E.D.N.Y.1981).[10]

Virtually all of the decisions which have required the plaintiff in a proceeding under section 523 to prove its case by clear and convincing evidence rely either directly or indirectly on a case under former § 17a of the Act which concluded that the common law standard for proof of fraud (i.e by clear and convincing evidence) must be incorporated to prove fraud in the context of a complaint to determine dischargeability. Brown v Buchanan, 419 F.Supp. 199 (E.D. Va.1975). The district court in Brown v. Buchanan, 419 F.Supp. at 202 stated:

Fraud is never presumed, but must be clearly alleged and must be proven by clear and convincing evidence. The Supreme Court dealt with this issue in Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419. There bankrupts were directed to turn over property to the Trustee in Bankruptcy. The parties asserted they did not have the books. Upon disputed evidence the Referee found the books were in the possession of the bankrupts, and upon failure to comply the bankrupts were confined to jail. There the Supreme Court said that the proceeding "for a turnover order in bankruptcy is one the right to which should be supported by clear and convincing evidence." (Underscoring added). The Court said such a proceeding was a "charge equivalent to one of fraud, and must be estab-

lished by the same kind of evidence required in a case of fraud in a court of equity. A mere preponderance of evidence in such a case is not enough." Id. 362, 49 S.Ct. at 174.

While the Supreme Court has used language setting forth the standard of proof in somewhat different words, the cases resolve themselves into the language of a preponderance of the evidence which is clear and convincing. See Southern Development Co. v. Silva, 125 U.S. 247 at 250, 8 S.Ct. 881 [at 882], 31 L.Ed. 678, "clear and decisive proof."

The reliance on Brown v. Buchanan to conclude that fraud be proved by clear and convincing evidence in the context of a bankruptcy has been carried over not just to dischargeability cases under section 523(a)(2) and (4), but also to cases under section 727.[11] See e.g., In re Woerner. Ironically, however, the continued vitality of Brown v. Buchanan as precedent has been undermined by the Fourth Circuit's decision in Combs v. Richardson, 838 F.2d 112 (4th Cir.) which holds the clear and convincing standard inapplicable to section 523(a)(6), and appears to call into question use of an elevated standard in bankruptcy for all issues including proof of fraud. Id. 838 F.2d at 116:

The Bankruptcy Code is silent as to the standard of proof necessary to establish the exceptions to discharge in § 523. In the face of this silence, courts may not imply a higher standard that the preponderance standard normally applied in civil proceedings.

See In re Parker, 17 B.C.D. 570, 572 (Bankr.E.D.Va.1988) (applying this language to conclude that fraud under section

---

10. The Fourth Circuit Court of Appeals recently concluded that proof of willfulness and maliciousness under § 523(a)(6) may be made by a preponderance of the evidence. Combs v. Richardson, 838 F.2d 112, 116 (4th Cir.1988). As discussed below, it appears that the Fourth Circuit would also apply a preponderance standard to proof of fraud under § 523.

11. A separate line of cases has required clear and convincing evidence to prove "actual fraud" under 11 U.S.C. § 548(a)(1) for the purpose of

establishing a fraudulent transfer. See In re Metro Shippers, 78 B.R. 747 (Bankr.E.D.Pa. 1987); Matter of Warner, 65 B.R. 512 (Bankr.S. D. Ohio 1986); In re Metro Paper Inc., 18 B.R. 56 (Bankr.D.D.C.1982); In re Clemente, 15 B.R. 937, 940 (Bankr.N.D.Ohio 1981). See also Phillips v. Wier, 328 F.2d 368, 371 (5th Cir.1964); Springmann v. Gary State Bank, 124 F.2d 678, 681 (7th Cir.1941); In re Locust Building Co., Inc.; 299 F. 756, 765 (2d Cir.1924).

727 may be proved by a preponderance of the evidence).

■ In considering the appropriate standard to prove fraud under 11 U.S.C. § 727, of some relevance is the following statement in the legislative history:

> The next three grounds for denial of discharge center on the debtor's wrongdoing in or in connection with the bankruptcy case. They are derived from Bankruptcy Act § 14c. If the debtor, with intent to hinder, delay, or defraud his creditors or an officer of the estate, has transferred, removed, destroyed, mutilated, or concealed, or has permitted any such action with respect to, property of the debtor within the year preceding the case, or property of the estate after the commencement of the case, then the debtor is denied discharge. The debtor is also denied discharge if he has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any books and records from which his financial condition might be ascertained, unless the act or failure to act was justified under all the circumstances of the case. The fourth ground for denial of discharge is the commission of a bankruptcy crime, *though the standard of proof is preponderance of the evidence rather than proof beyond a reasonable doubt.* These crimes include the making of a false oath or account, the use or presentation of a false claim, the giving or receiving of money for acting or forbearing to act, and the withholding from an officer of the estate entitled to possession of books and records relating to the debtor's financial affairs.

H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 384 (1977); S.Rep. No. 95–989, 95th Cong. 2nd Sess. 98–99 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5884–85, 6340 (emphasis added).

By this statement, Congress seems to imply its belief that a preponderance of the evidence standard should be used under section 727 even to prove fraud. The "fourth ground" referred to is section 727(a)(4) which requires proof that the debtor acted "knowingly and fraudulent-

ly". Upon closer reading, however, I find that this legislative statement is inconclusive. First of all, the purpose of the statement is to indicate that although the language of section 727(a)(4) incorporates certain bankruptcy crimes (found at 18 U.S.C. § 151 *et seq.*), it would not be necessary to present proof by the traditional criminal standard—beyond a reasonable doubt. It is unclear whether Congress ever considered the intermediate standard traditional for fraud—i.e. clear and convincing evidence. Second, historically, use of the term "clear and convincing evidence" has not always been inconsistent with a preponderance standard. Until relatively recently, clear and convincing evidence was considered a formulation of the preponderance standard applicable to certain issues. *See* C.J.S., Fraud § 114 at 426–432. *See also, e.g., In re Locust Building Co., Inc.,* 299 F. at 765:

> The general rule is that fraud must be made out by a preponderance of evidence, which should be so clear and strong as to preponderate over the general and reasonable presumption that men are honest and do not ordinarily commit fraud or act in bad faith. 27 C.J. 62. And in Wigmore on Evidence, Vol. 4, § 498, alluding to the rule that in civil cases a preponderance of evidence is sufficient, he states that a stricter standard is applied in cases of fraud. He says:
>
>> "But a stricter standard, in some such phrase as 'clear and convincing proof' is commonly applied to measure the necessary persuasion for a charge of fraud," and in a few related classes of cases.

■ I thus conclude that the legislative history is not dispositive of whether it is appropriate to require an elevated standard for proof of fraud on the question of denial of discharge. Moreover, two factors convince me that a requirement of clear and convincing proof is, in fact, appropriate.

The first is the long and virtually unbroken common law tradition of applying some form of elevated evidentiary burden to proof of fraud both in bankruptcy proceedings and out. *Oriel v. Russell,* 278

U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1928); *Lalone v. United States,* 164 U.S. 255, 17 S.Ct. 74, 41 L.Ed. 425 (1896); *Atlantic Delaine Co. v. James,* 94 U.S. 207, 24 L.Ed. 112 (1876); *Ratay v. Lincoln National Life Insurance Co.,* 378 F.2d 209 (3rd Cir.) *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); *Jett v. Zink,* 362 F.2d 723 (5th Cir.) *cert. denied,* 385 U.S. 987, 87 S.Ct. 600, 17 L.Ed.2d 448 (1966); *Hardware Mutual Insurance Co. v. Jacob Hieb,* 146 F.2d 447 (8th Cir.1945); *In re Locust Building Co; Brown v. Buchanan; Gerfin v. Colonial Smelting & Refining Co.,* 374 Pa. 66, 97 A.2d 71 (1953); *Pusic v. Salak,* 261 Pa. 512, 104 A. 751 (1918). *See* 9 *Wigmore on Evidence.* § 2498 at 424 to 425 (1981 ed.). The second is the nature of the remedy which a plaintiff seeks under section 727. The remedy of denial of discharge is particularly severe, because it precludes the debtor from obtaining any relief at all from creditors at the conclusion of his bankruptcy case whether or not those creditors were affected by the fraud. The remedy thus may exceed damages for the fraud alleged.[12]

Consistently with these considerations, it has long been held that "the right to discharge is statutory [so that objections to discharge] must be construed liberally in favor of the bankrupt." *Matter of Decker,* 595 F.2d 185, 187 (3rd Cir.1979) *quoting In re Leichter,* 197 F.2d 955 (3rd Cir.1952) *cert. denied,* 344 U.S. 914, 73 S.Ct. 336, 97 L.Ed. 705 (1953); *In re Pioch,* 235 F.2d 903, 905 (3rd Cir.1956). *Accord, e.g., In re Johnson,* 82 B.R. 801 (Bankr.E.D.N.C. 1988); *In re Woerner,* 66 B.R. 964 (Bankr. E.D.Pa.1986); *In re Epperson,* 45 B.R. 708 (Bankr.E.D.Tenn.1985). A requirement of proof of fraud by clear and convincing evidence is consistent with liberal construction of section 727 in favor of the debtor's discharge and accompanying fresh start.

Thus, the long tradition of requiring an elevated evidentiary standard for proof of fraud taken together with the magnitude of the remedy sought convince me that it is appropriate to require clear and convincing evidence to prove fraud or fraudulent intent under 727.[13] Other elements may be proved by a preponderance of the evidence.

### III.

I next must turn to the elements required to be proved to establish each of New World's claims. Under 727(a)(2)(A), in connection with an alleged transfer of property a plaintiff must prove:

1. A transfer of property has occurred, made by the debtor or made at his direction;

2. The transfer involved property of the debtor;

3. The transfer was made within one year of the commencement of the bankruptcy case;

4. The debtor had, contemporaneously with the transfer, intent to hinder, delay, or defraud a creditor.

*In re Johnson,* 80 B.R. 953, 957 (Bankr.D. Minn.1987). *Accord, e.g., In re Kessler,* 51 B.R. 895 (Bankr.D.Kans.1985); 4 *Collier* ¶ 727.02[1][b] at 727–11.

In the case at bench the debtor filed bankruptcy on May 29, 1986. The transfers occurring on February 14, 1985 to pay the Household Realty Corp. mortgage and on April 19, 1985 to pay the Guaranty Trust Co. mortgage thus occurred more than one year before the debtor's bankruptcy and are outside the scope of section 727(a)(2). *Compare Matter of Ramos,* 8 B.R. 490 (Bankr.W.D.Wis.1981).

---

12. Courts have long recognized that a denial of discharge is a more severe penalty than a determination that a particular debt is nondischargeable. *Cf. In re Paolino,* 75 B.R. 641 (Bankr.E. D.Pa.1987) (fraud of agent may be imputed to principal for purposes of nondischargeability but not for purposes of denial of discharge). It is thus not easy to reconcile a higher standard of proof under section 523(a)(2), (4) than under section 727. *See In re Woerner,* 66 B.R. at 972.

13. Although issues of res judicata and collateral estoppel are much less likely to arise under section 727 than under section 523, *see Daboul v. Richardson,* I note that proof of fraud in Pennsylvania has long been required to be made by clear and convincing evidence. *See, e.g., Gerfin v. Colonial Smelting & Refining Co.*

■ Only payment of the purchase money mortgage on June 25, 1985 occurred within the year preceding the bankruptcy. As discussed above, however, the parties dispute the source of funds in the bank account which Mrs. Garcia used to satisfy the balance of the mortgage.

It is clear that in order to be a cognizable transfer under section 727(a)(2) the property transferred must be property of the debtor. Here, the plaintiff did not prove even by a preponderance of the evidence that money in the account which was solely titled in the name of Mrs. Garcia actually belonged to the debtor. If anything, the evidence establishes otherwise. First, the debtor testified that the money came from other sources. Second, the plaintiff submitted evidence that all of Garcia's income was being deposited into a separate joint account. Plaintiff asks me to infer on the basis of the fact that Mrs. Garcia was a housewife that any money in the bank account had to come from Garcia. I cannot do so. Even "housewives" often have sources of income including investments, gifts and bequests. *See In re Wolf,* 165 F.2d 707, 709 (3rd Cir.1948). I cannot conclude on the basis of the evidence presented that money in the bank account actually belonged to Garcia when it was transferred to pay the balance of the mortgage.[14] Consequently, relief under section 727(a)(2)(A) must be denied.[15]

Plaintiff's case under section 727(a)(4)(A) is significantly more troubling. Plaintiff alleges that Garcia held an equitable ownership interest in the house which he knowingly and fraudulently failed to disclose in his schedules. Additionally, plaintiff has alleged and Garcia acknowledges that he failed to disclose certain bank accounts, a safe deposit box, and a contingent unliquidated claim.

The Court of Appeals for the Third Circuit recently reiterated the absolute importance to the bankruptcy process of complete and candid disclosure of assets and liabilities by debtors. *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3rd Cir.1988). *Accord e.g., In re Tully,* 818 F.2d 106, 110 (1st Cir.1987). 11 U.S.C. § 727(a)(4) serves *inter alia* the important function of sanctioning those chapter 7 debtors who deliberately fail to make proper disclosures. Such debtors are denied discharge and are thus effectively denied relief from creditors in bankruptcy. *Accord e.g., In re Ball,* 84 B.R. 410, 415 (Bankr.D.Md.1988).

As stated by our District Court in *Matter of Bobroff,* 69 B.R. 295, 297 (E.D.Pa.1987):

It is well established that a debtor's declaration that his schedule of property is "true and correct" constitutes an adequate ground for disallowal of discharge where the debtor has knowingly and fraudulently omitted assets from the schedule, *see In re Beiner,* 129 Fed. 155, 159 (D.C. Iowa 1904), or has knowingly and fraudulently understated the value of assets listed in the schedules, *see In re Cycle Accounting Services,* 43 B.R. 264, 373 (Bankr.E.D.Tenn.1984).

Clearly, before I can reach the issue of whether the debtor acted knowingly or fraudulently in omitting assets from his schedules, I must determine whether an asset was omitted at all. In the case at bench, the debtor denies an ownership interest in the home which is titled solely in

---

**14.** Defendant further accurately points out that money in the account, if it came from Garcia at all, may have been transferred when it was deposited into the account which was solely owned by Mrs. Garcia. That transfer most likely occurred more than one year prior to the date on which the debtor filed bankruptcy.

**15.** New World did not allege that the debtor concealed property within one year of his bankruptcy. I thus need not address the question of whether there was a "continuing concealment" of an interest in real estate by the debtor which would require denial of discharge pursuant to

section 727(a)(2)(A). *See In re Olivier,* 819 F.2d 550 (5th Cir.1987); *In re Kauffman,* 675 F.2d 127 (7th Cir.1981); *In re May,* 12 B.R. 618, 627 (N.D.Fla.1980); *Matter of Vecchione,* 407 F.Supp. 609 (E.D.N.Y.1976); *In re Elliott,* 83 F.Supp. 771 (E.D.Pa.1948) *aff'd,* 173 F.2d 895 (3rd Cir.1949). Most of the same issues, however, are relevant to consideration of whether the debtor fraudulently failed to disclose an equitable interest in the property legally titled in his wife. *See Matter of Vecchione.* That closely related issue will be discussed below as it was raised by New World.

the name of his wife. Given this circumstance, he asserts that he was entirely justified in not including the property in his schedule of assets.

Bankruptcy courts have long been concerned with the problem of debtors shielding property from the reach of creditors by placing legal title in others while maintaining an equitable interest. Frequently, failure to disclose such an interest has given rise to denial of discharge. *See, e.g., In re Kaiser,* 722 F.2d 1574 (2d Cir.1983); *In re Martin,* 698 F.2d 883 (7th Cir.1983); *Hudson v. Mercantile National Bank,* 119 F. 346 (8th Cir.1902); *Matter of Vecchione,* 407 F.Supp. 609 (E.D.N.Y.1976); *In re Gugliada,* 20 B.R. 524 (Bankr.S.D.N.Y. 1982). *See also United States v. Schireson,* 116 F.2d 881 (3rd Cir.1941) (prosecution for failing to disclose on bankruptcy schedules property previously transferred to wife); *In re Elliott,* 83 F.Supp. 771, 774 (E.D.Pa.1948) *aff'd.* 173 F.2d 895 (3rd Cir. 1949) (property transferred to wife was concealed from creditors warranting denial of discharge); *In re Fragetti,* 24 B.R. 392 (Bankr.S.D.N.Y.1982) (although property was transferred without consideration to debtor's daughter, no proof that property was intentionally left off debtor's schedules).

■ In determining that property legally titled in another was fraudulently omitted from a debtor's schedules, two issues of intent may be relevant. The first is, the debtor's intent at the time title to the property was transferred. This question of intent has relevance to a determination of whether the debtor retains an interest in the property which can be reached by creditors, e.g. through state fraudulent conveyance laws as made applicable by 11 U.S.C. § 544. *See In re Elliott. See generally* 11 U.S.C. § 548(a)(1). To the extent state fraudulent conveyance laws no longer require proof of actual intent in all circumstances, other issues, such as insolvency and the consideration received for the transfer may become significant. *See In*

*re Kaiser. See generally* 11 U.S.C. § 548(a)(2).

■ In the case at bench, New World presented no evidence by which I can infer the debtor's intent at the time he and his wife agreed to have their residential property placed in her name alone. Similarly no evidence was presented on the question of insolvency or about consideration received for the transfer. Moreover, even if such evidence had been presented, I may not have been able to determine that the debtor retained an interest in the property absent evidence presented about Canadian law. *See* Fed.R.Civ.P. 44.1. Although the rule permits courts, in their discretion to independently examine sources of foreign law, I decline to do so in the absence of pleading or proof that the debtor's transfer to his wife violated Canadian fraudulent conveyance laws. *See Bartsch v. Metro–Goldwyn–Mayer, Inc.,* 391 F.2d 150, 155 n. 3 (2d Cir.) *cert. denied* 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed.2d 96 (1968). *See also* 5 *Moore's Federal Practice* ¶ 44.1.04 at 44.-1–6 (2d ed. 1987):

> Under the rule, clearly there is no obligation to investigate the applicability of foreign law when no notice is served pursuant to the rule.

■ However, the inquiry does not end here. The question of the debtor's intent at the time the transfer was made is relevant but not dispositive.[16] Because this is not a proceeding to actually undo the transfer, more relevant is the debtor's intent at the time the schedules were prepared. *See In re Gugliada,* 20 B.R. at 533. If the debtor knew of a *potential* interest in his residence and intentionally failed to disclose it, discharge may be denied.

As stated recently by the Ninth Circuit Court of Appeals:

> The debtor ... must be scrupulous in providing notice of all assets to which others may make a legitimate claim. While the debtor's view may ultimately prevail ... he may not pretermit the inquiry by failing to disclose the asset

---

16. Such intent may be more relevant to cases in which the doctrine of "continuing concealment" is involved. *See supra* note 15.

just because he himself is satisfied he may keep it.

*In re Woodson*, 839 F.2d 610, 616 (9th Cir.1988). The issue in *Woodson* was whether after-acquired property became property of the estate pursuant to 11 U.S. C. § 541. Under section 727(a)(4)(A) a similar issue must be framed somewhat differently; the question becomes whether the debtor fraudulently intended to pretermit the inquiry by failing to list a potential interest in property.

■ In the case of the Garcias, it is undisputed that if legal title to the debtor's Canadian residence remained in the debtor, creditors would be able to reach that property in bankruptcy. The debtor's failure to disclose that property would clearly be material if the requisite intent is found. *See In re Steiker*, 380 F.2d 765, 768 (3rd Cir. 1967); *In re Kaufhold*, 256 F.2d 181, 185 (3rd Cir.1958).

As stated above, it is New World's burden to prove the debtor's fraudulent intent by clear and convincing evidence. Mere failure to disclose, without more is insufficient to establish the requisite intent. *In re Meo*, 84 B.R. 24, 28 (Bankr.M.D.Pa. 1988); *In re Koch*, 83 B.R. 898, 904 (Bankr. E.D.Pa.1988); *In re Woerner*, 66 B.R. 964, 973 (Bankr.E.D.Pa.1986) *aff'd* C.A. 86–7324 (E.D.Pa. April 28, 1987). Although some extrinsic evidence is necessary to establish *inter alia* that the debtor was aware of the existence of the asset and deliberately failed to disclose it, *see Avallone v. Gross*, 309 F.2d 60, 61 (2nd Cir.1962), such evidence may be circumstantial.[17] *See In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir.1986); *Farmers Cooperative Association v. Strunk.*

Many of the traditional indicia by which courts have found the requisite intent on the part of a debtor to deny discharge in analagous situations are present here. First, at least a portion of the initial funds used to obtain the residence can be traced to sale of property of the debtor. *E.g., In re Elliott*, 83 F.Supp. at 773; *In re Gugliada*. He thus contributed his own funds to create equity in the property. Second, the debtor's income was used to make monthly mortgage payments and contributed to pay off at least two mortgages on the property. *E.g., Matter of Vecchione*, 407 F.Supp. at 617; *In re Gugliada*, 20 B.R. at 531. Third, he continued to live in and thus use and enjoy the property, although legal title was maintained in his wife.[18] *E.g., In re Kauffmann; Matter of Vecchione; In re Gugliada.*

■ Under the circumstances presented here, a reasonable debtor ought to be aware that creditors might consider his residence as an asset of his estate. In fact, it is not difficult to draw an inference from these facts when viewed as a whole that the debtor has engaged in a deliberate attempt to prevent his creditors from investigating his potential ownership interest in the residence. I cannot conclude though, that the inference drawn, taken alone, is sufficiently compelling to carry the creditor's burden to establish by clear and convincing evidence, the requisite fraudulent intent. *See In re Fragetti; In re Ries*, 22 B.R. 343 (Bank.W.D.Wis.1982). However, in the case at bench, the debtor also omitted various other assets including two bank accounts, a safe deposit box and a $700,-000.00 contingent, unliquidated counterclaim.[19] In determining the debtor's intent

---

**17.** In general, the extrinsic evidence necessary to establish fraudulent intent may consist, for example, of proof of the size or value of the asset, *see In re Topping*, 84 B.R. 840, 842 (Bankr. M.D.Fla.1988) or proof that the debtor used the asset in close proximity to his bankruptcy filing. *See In re Somerville*, 73 B.R. 826 (Bankr.E.D.Pa. 1987).

**18.** Additionally, he signed the papers by which money was borrowed against the house. *See In re Kaiser*, 32 B.R. 701, 705 (S.D.N.Y.) *aff'd*, 722 F.2d 1574 (2d Cir.1983). No evidence was

presented, however about the use of the funds borrowed.

**19.** Debtor's counsel appears to have taken the position that his client's failure to list the property is excused by amended schedules, filed subsequent to New World's complaint under section 727. This position has no merit. The existence of sanctions for failure to disclose assets would serve no purpose if deficiencies could simply be remedied any time parties in interest call attention to them. *See e.g., In re Cadarette*, 601 F.2d 648, 652 (2d Cir.1979); *Huntley v. Snider*, 88 F.2d 335 (1st Cir.1937); *In re Elliott*,

in leaving his residence off the schedules, the debtor's other omissions become relevant. While omission of one asset may be attributed to inadvertance or lack of care, the failure to schedule numerous assets is less likely to be innocent. Although no evidence was offered about the size or value of any single asset,[20] *see In re Topping,* 84 B.R. 840, 842 (Bankr.M.D.Fla.1988), the cumulative effect of evidence of numerous assets not listed is to satisfy the creditor's burden of proof. *See In re Vecchione,* 407 F.Supp. at 616:

> While a series of transfers by a debtor may be innocuous when viewed in vacuo, an inference of irregularity arises from a series of such transfers.

Similarly, an inference of irregularity may arise from a series of assets or potential assets omitted from a debtor's schedules.

Ultimately, the evidence presented to me is suggestive of a debtor who filed a chapter 7 proceeding in a careful plan to have it proceed as a no asset case. It appears that any asset which a reasonable trustee might have investigated was deliberately left off the schedules. Under those circumstances, 11 U.S.C. § 727(a)(4)(A) precludes a discharge.

Judgment will therefore be entered in favor of the creditor/plaintiff.[21]

83 F.Supp. 771, 774 (E.D.Pa.1948) *aff'd.* 173 F.2d 895 (3rd Cir.1949).

**20.** The only exception, of course, is proof that the debtor requested $700,000.00 on his state court counterclaim in a state court pleading. It is difficult to fathom how the debtor could have omitted such a large claim from his schedules.

**21.** Both parties to this proceeding failed to comply with my pretrial order. As stated at trial, I intend to consider the question of sanctions separately from this opinion and order.