DEPARTMENT OF LABOR AND INDUSTRY OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ASBURY METROPOLITAN HOTEL COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, T/A METROPOLITAN HOTEL & POOL, DAVID WEINBLATT, REGISTERED AGENT, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 16, 1963—Decided October 3, 1963.

Before Judges GOLDMANN, KILKENNY and COLLESTER.

*Mr. Joseph Hoffman* argued the cause for appellant (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. Seymour S. Weinblatt* argued the cause for respondent.

The opinion of the court was delivered by

KILKENNY, J. A. D.  Plaintiff Department of Labor and Industry of New Jersey brought an action in the Monmouth County District Court, pursuant to *N. J. S. A.* 34:11–7, to recover $650 in penalties provided for by *N. J. S. A.* 34:11–6 for seven alleged violations by defendant of *N. J. S. A.* 34:11–4. This statute requires employers to pay their employees at least every two weeks, in lawful money of the United States, "the full amount of wages" earned up to within 12 days of such payment. There was a judgment for defendant. Plaintiff appeals therefrom.

The appeal has been submitted on the following agreed statement of facts:

"Defendant, Asbury Metropolitan Hotel Company, operates a hotel known as the 'Metropolitan Hotel & Pool' in the City of Asbury Park, Monmouth County, New Jersey. In order to procure certain unskilled labor to assist in the operation of the hotel, defendant has, at times, had two employment agencies located in Philadelphia, Pennsylvania, send prospective employees to Asbury Park, said employment agencies being unlicensed by the State of New Jersey. As a prerequisite to the receipt of a reference for employment by the defendant, the employment agencies have had the prospective employees sign assignments of their future wages. These assignments are for the amounts to be recovered by the employment agencies for their service fees and for any advancements made by them to prospective employees in order to cover the cost of transportation from Philadelphia to Asbury Park.

Upon arriving in Asbury Park, prospective employees have gone to the defendant's place of business and voluntarily given the references and wage assignments to agents of the defendant, in return for employment. In the latter part of 1961 and part of 1962, the defendant honored seven such wage assignments for employment agency fees, deducted the amounts due thereunder from the wages then due certain employees, and remitted the deductions to the employment agencies."

The crucial issue herein is whether an employer violates *N. J. S. A.* 34:11–4 when he honors an assignment of wages

voluntarily executed by an employee in favor of an employment agency in payment of obligations due the agency by the employee. These obligations are the moneys advanced by the agency to the employee to pay his transportation to the place of employment and the fee to which the agency is legally entitled for having procured the job for him.

It is to be noted at the outset that these debts from the employee to the agency arise out of a separate agreement between the employee and the agency to which the employer is not a party, rather than out of any direct agreement between the employer and the employee. The employer's recognition of the agency's legal rights under the voluntary assignment is not an agreement as to wages between the employer and employee. Therefore, we deem inapplicable to the facts herein those portions of *N. J. S. A.* 34:11–4 which make unlawful, null and void *an agreement between the employer and the employee* "for the payment of wages," otherwise than as provided by this act.

The position of the Department of Labor and Industry is that *N. J. S. A.* 34:11–4 prohibits employers from making any deductions from the wages due their employees unless such deductions are *statutorily* authorized. It points to the first few words of the section, "Except as otherwise provided by law," as justification for its contention. The Department acknowledges that any deductions which, by federal or state law, an employer is required or authorized to make, may be considered as implied exceptions to the "full amount of wages" provision of *N. J. S. A.* 34:11–4. In this category it places *N. J. S. A.* 43:21–7(d)(1) and *N. J. S. A.* 43:21–33, allowing employers who qualify for coverage to withhold from wages earned such amounts as are required by the Unemployment Compensation and Temporary Disability Benefits Laws; *N. J. S. A.* 52:14–15.9a, permitting deductions from the pay of government employees for group insurance premiums; *N. J. S. A.* 52:14–15.9c, authorizing deductions from the pay of public employees for their contributions to the United Fund, the Community Chest, or

United Appeal; *N. J. S. A.* 52:14–15.5, permitting deductions from the pay of government employees for United States bonds; *N. J. S. A.* 34:11–33.6, allowing deductions for taxes due a foreign jurisdiction under special circumstances. Withholding taxes for federal income tax purposes is another instance of a deduction required by law.

The Department concedes that voluntary assignments of wages are valid, in the absence of a statute prohibiting them. It cites *Rodijkeit v. Andrews,* 74 *Ohio* 104, 77 *N. E.* 747 (*Sup. Ct.* 1906). It does not dispute the validity of the assignments herein, as such. It also agrees that there is no New Jersey statute which generally precludes or invalidates assignments of wages, either past-due or to be earned in the future. In fact, some wage assignments are expressly sanctioned by our laws. *N. J. S. A.* 17:13–42 allows assignments of future wages to not more than 10% thereof to be made by members of credit unions as collateral for loans, and the employers of such members are permitted to pay such assignments. *N. J. S. A.* 17:10–17 and 18 authorize assignments of wages for the payment of loans due small loan companies, subject to the limitations and conditions therein expressed. On the other hand, *N. J. S. A.* 34:11–25 and 26, saved from repeal by *N. J. S.* 12A:10–104, make it a misdemeanor for any person to have assigned to him any wages due, or to become due, to any employee, upon which the assignee shall have received or contracted to receive from such employee more than the legal rate of interest. However, it is expressly provided that *section* 34:11–25 "shall not apply to any assignment of pay or wages, for the payment of the full value of goods, wares or merchandise sold to an employee, or for professional services to the employee mentioned in the assignment."

While recognizing that the assignments involved herein may be valid because not prohibited by statute, the Department argues that *N. J. S. A.* 34:11–4 precluded the employer from honoring these valid assignments because there was no statute expressly permitting him to do so. We do

not agree with that legal philosophy or feel that such was the legislative intent in adopting *N. J. S. A.* 34:11–4. To follow the Department's legal reasoning would be to place an employer on the proverbial horns of a legal dilemma. If these assignments are valid, as the Department concedes, and notice thereof is given to the employer, he is legally obligated under the general law of assignability to pay over the sums assigned to the assignee. Failure to do so under this basic law of contracts would make him personally liable to the assignee. *Uniform Commercial Code, N. J. S.* 12A:9–318(3); *Russell v. Fred G. Pohl Co.,* 7 *N. J.* 32, 40 (1951). On the other hand, if the Department's legal reasoning were correct, the employer's acknowledgment of his legal obligation to honor the assignments would subject him to penalties for violating *N. J. S. A.* 34:11–4. In our view, this statute was never intended to produce such a result.

As pointed out in *Department of Labor and Industry v. Rosen,* 44 *N. J. Super.* 42 (*App. Div.* 1957):

"Historically, *N. J. S. A.* 34:11–4 is derived from *Chapter* 179 of the *Laws* of 1896 and *Chapter* 38 of the *Laws* of 1899, the latter entitled 'An Act to provide for the payment of wages in lawful money of the United States every two weeks.' The motivating factor for the enactment of the legislation was the elimination of the practice prevalent among factory owners, particularly by owners of glass factories in southern New Jersey, of paying wages in the form of order books or scrip, redeemable only at company-owned stores." (at *p.* 45)

The statute assures the employee of payment in cash at regular intervals and gives him the freedom to dispose of his wages as he wishes, rather than as dictated by his employer.

"Statutory language is to be construed with the context of the whole statute, its purposes, and the manner in which the words in question were employed, and to be given the generally accepted meaning unless the contrary intent is clear." *General Public Loan Corp. v. Director, Div. of Taxa-*

*tion,* 13 *N. J.* 393, 400 (1953). To construe *N. J. S. A.*
34:11–4 as prohibiting an employer from honoring wage
assignments voluntarily made, except those specifically au-
thorized by act of Congress or the Legislature, as the Depart-
ment contends, would not be an effectuation of the purposes
of the statute.

The unsavory practices intended to be proscribed by *N. J.
S. A.* 34:11–4, as noted in the *Rosen* case, *supra,* 44 *N. J.
Super.,* at *p.* 46, do not include the honoring of a voluntary
request by an employee that part of his wages be paid by the
employer to an employment agency in reimbursement of
moneys actually advanced by it for the transportation of the
employee to his new job and in satisfaction of a fee legally
earned. The employees who gave the seven assignments in
issue have not challenged their validity or the honoring
thereof by defendant. *N. J. S. A.* 34:8–24 recognizes the
right of an employment agency to receive a fee from those
for whom it has procured employment, as well as reimburse-
ment for transportation expenses advanced by it.

The strict, literal interpretation of *N. J. S. A.* 34:11–4,
advocated by the Department, would preclude an employer
from honoring a request by his employee to turn over a part
of wages earned to the employee's wife; or to a labor union
for dues under a check-off system, a practice recognized as
"a contractual expedient" in *Local* 60, *&c., America v. Welin
Davit & Boat Corp.,* 133 *N. J. Eq.* 551, 553 (*Ch.* 1943);
or to a judgment creditor under a voluntary arrangement
in lieu of a garnishee order; or pursuant to other common
existing practices, such as allowing employees to buy com-
pany products or department store merchandise at a discount.
These are not the abuses which the Legislature intended to
remedy when it adopted *N. J. S. A.* 34:11–4. They do not
diminish the employer's obligation to pay his employee regu-
larly, at least once every two weeks, in lawful money of the
United States. The recognition of a voluntary assignment
to some third person in payment of a legal obligation is not
in the same category as the condemned practice of an em-

ployer's requiring an employee to accept "scrip or specially marked coinlike pieces of metal redeemable only at company commissaries for food and clothing, or applicable to rent for company houses." *Rosen, supra*, 44 *N. J. Super.*, at *p.* 46.

Nor does the legislative expression, "except as otherwise provided by law," spell out a legislative intent that only those voluntary assignments are valid which have been expressly sanctioned by statute. We interpret this language to comprehend as not within the legislative ban a statute which would have authorized, in particular cases, payment of wages less often than once in every two weeks, *e. g.*, monthly; or which would have permitted payments of wages by check, rather than in "lawful money," legal tender of the United States, as *N. J. S. A.* 34:11–4, now permits under specified conditions. So too, the same statute excepts from its applicability "employees engaged in agricultural work or as watermen."

If our Legislature wanted to preclude all voluntary assignments of wages, except those expressly permitted by statute, it could have expressly so provided, as did the Rhode Island Legislature. See *Shine v. John Hancock Mut. Life Ins. Co.*, 76 *R. I.* 71, 68 *A. 2d* 379 (*Sup. Ct.* 1949), reargument denied 69 *A. 2d* 530 (*Sup. Ct.* 1949). Nor do we interpret legislative sanction given to certain voluntary and involuntary deductions from wages, noted above, as expressive of an intent that those permissive acts prohibit all others. The Legislature has not manifested any such intent with sufficient clarity as to preclude the normal rules of statutory construction, that laws in derogation of common law rights and penal statutes are to be strictly construed. *State v. Brenner*, 132 *N. J. L.* 607, 611 (*E. & A.* 1944). *N. J. S. A.* 34:11–4 is such a law.

For the above stated reasons, the judgment of the Monmouth County District Court is affirmed.