In the Matter of Sidney STEIKER, a/k/a Sydney Steiker, a/k/a Sidney G. Steiker, Bankrupt.

Sidney Steiker, Appellant.

No. 16332.

United States Court of Appeals Third Circuit.

Argued May 4, 1967.

Decided July 12, 1967.

Isadore B. Miller, Miller & Platt, Paterson, N. J., for appellant.

Sheldon Schachter, Kleinberg, Moroney & Masterson, Newark, N. J., for appellee.

Before STALEY, Chief Judge, and BIGGS and HASTIE, Circuit Judges.

## OPINION OF THE COURT

STALEY, Chief Judge.

The question before us is whether the appellant, Sidney Steiker, a bankrupt, was properly denied a discharge in bankruptcy. In the proceedings below, specifications of objections to the bankrupt's discharge were lodged by the trustee. The referee found that two of the five specifications submitted were well founded and denied the discharge. On a certificate of review, the referee's findings and conclusions were affirmed by the district court; and this appeal followed.

On March 10, 1965, Sidney Steiker filed a voluntary petition in bankruptcy. He represented at that time that he was unemployed. This statement was given under oath as was the subsequent statement that he had neither been self-employed nor employed by others since the businesses of which he was part owner closed in 1961.

At the time these proceedings were before the referee, Mr. Steiker was 52 years old, had been married and divorced three times and lived with his mother and a sister. His mother, Sarah Steiker, owner of all the stock of Steiker Industries, Inc., supported him and two children from his previous marriages. Sarah Steiker was in her late seventies and in poor health during 1964 and 1965. The bankrupt testified that he "spent a lot of time at Steiker Industries" looking after his mother's interests. He also stated that he was vice-president of the company, that he was authorized to sign the checks of the corporation, that he used the company car, supervised its employees, waited on customers and made sales of automobiles.

Mr. Steiker admitted that he has been in grave financial trouble since 1961 and stated that he could not get a job because of the suits brought and judgments obtained against him by his creditors. His sole means of support was the money given to him by his mother and the funds he withdrew from Steiker Industries (with his mother's permission). When asked if the sums advanced to him by his mother and Steiker Industries were loans, he replied that both the pocket money given to him by his mother and the amounts obtained from Steiker Industries were gifts. The schedules filed by the bankrupt listed Sarah Steiker as a creditor in the amount of $29,426.10 (exclusive of "pocket money" gifts), but Steiker Industries was not listed despite

the bankrupt's knowledge that a large sum was being carried on the corporate books as a debt.

The trustee filed the following specifications of objections to the granting of a discharge:

"1- Said bankrupt, Sidney Steiker did knowingly and fraudulently make a false oath and account in and in relation to this bankruptcy proceeding, in that in the Statement of Affairs filed by him and in Answers to Questions propounded at hearings conducted in the above proceedings and while under oath he did falsely, fraudulently and with knowledge aver that he had no income by way of salary or otherwise when, in fact, he so did, which falsity was an offense punishable by imprisonment as provided under Title 18, U.S. C. Sec. 152.

"2- Did file false and fraudulent schedules in this proceeding, with knowledge thereof, in that he failed to list as an alleged creditor, Steiker Industries, Inc."

Section 14(c) of the Bankruptcy Act, 11 U.S.C. § 32(c), provides: "The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as provided under section 152 of Title 18 * * *." 18 U.S.C. § 152 makes it a crime punishable by fine or imprisonment for anyone who " * * * knowingly and fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding."

A number of cases have been decided in this circuit delineating the requisites for the denial of a discharge. Judge Kalodner, speaking for the court in In re Kaufhold, 256 F.2d 181, 185 (C.A. 3, 1958), noted the following well-settled principles:

"A false oath made by a bankrupt in relation to proceedings in bankruptcy, sufficient to justify denial of discharge, must be 'knowingly and fraudulently' made; it is sufficient that the bankrupt knows what is true and, so knowing, wilfully and intentionally swears to what is false; the false oath must be to an untrue statement in a matter material to an issue which is itself material to the proceeding; the making of a false oath is sufficient to justify an inference of an intent to defraud creditors; the burden of proof is on the objecting creditor to make out a prima facie case, but once he has done so the burden shifts to the bankrupt; a finding that an oath was 'knowingly and fraudulently' made is in the nature of an ultimate finding of fact, and although it is subject to review free of the impact of the so-called 'clearly erroneous rule' applicable to ordinary findings of fact by the trier of the facts, nevertheless, it cannot be disturbed if the evidence on which it is premised measures up to the applicable standard of legal proof." [1]

As to the first specification—that Steiker testified falsely under oath that he was unemployed—the question before us is simply whether the false oath related to a material matter in the bankruptcy proceeding. The obvious reason for this is our circumscribed scope of review in an appeal of this type. The referee made numerous findings, many of which were drawn from the undisputed testimony of the bankrupt, and concluded that he was in the employ of Steiker Industries and that he knowingly and fraudulently testified under oath to the contrary. We recently noted in In re Rubin, 378 F.2d 104 (C.A. 3, 1967), that the mandate of General Order 47 [2]

1. Proof of the reasons for denial of a discharge must be real and substantial and not technical, conjectural or speculative. The Bankruptcy Act must be construed liberally in favor of the bankrupt and the burden is on the objecting creditor to prove actual, fraudulent intent to hinder, delay or defraud creditors on the part of the bankrupt. In re Pioch, 235 F.2d 903, 905 (C.A.3, 1956).

2. "Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of fact unless clearly erroneous."

precludes this court as well as the district court from not accepting the referee's basic findings of fact. See In re Wolf, 165 F.2d 707, 709–710 (C.A. 3, 1948). Though ultimate findings are subject to appellate scrutiny free of the "clearly erroneous" rule, as was noted above, those findings should be undisturbed where they are supported by the underlying factual determinations which cumulatively satisfy the applicable standard of proof. The referee's basic findings fully support his conclusions that the bankrupt was employed by Steiker Industries and that he knowingly and fraudulently swore to the contrary under oath.

█ A false oath knowingly and fraudulently made, however, is not all that must be established. It must also be shown that the false oath was given in relation to some material matter in the bankruptcy proceedings.[3] In re Kaufhold, supra; Hanover-Capital Trust Co. v. Meyer, 57 F.2d 815 (C.A. 3, 1932); 1 Collier, Bankruptcy ¶ 14.25 at 1324, 7 Remington, Bankruptcy § 3086; Annot., 59 A.L.R.2d 791, 831 ("Materiality") (1958). It has been said that the determination of whether the false oath is material depends on whether the inquiry bears a relationship to the bankrupt's business transactions or his estate, Willoughby v. Jamison, 103 F.2d 821, 824 (C.A. 8), cert. denied, 308 U.S. 588, 60 S.Ct. 111, 84 L.Ed. 492 (1939), or concerns the "discovery of assets, business dealings, and relations of the bankrupt, the existence and disposition of his property and debts and the like." 7 Remington, Bankruptcy § 3086.[4]

█ The referee found a direct relationship between the false oath and the bankrupt's debts and estate. He pointed out that the deliberate and intentional failure to disclose the employment relationship prevented Steiker's creditors from garnishing his wages or salary as may be done under New Jersey law. See Department of Labor & Indus. v. Asbury Metropolitan Hotel Co., 80 N.J.Super. 486, 194 A.2d 244 (1963). We fully agree with the referee's conclusion and hold that the false response to the inquiry concerning employment related to a material matter.

The second specification presents no difficulty. It concerns the failure of Sidney Steiker to list Steiker Industries as a creditor. The bankrupt cites In re Topper, 229 F.2d 691 (C.A. 3, 1956), for the proposition that the omission of a creditor "is not a ground for a specification per se." We agree. In the Topper case we noted the difficulty of inferring fraudulent intent where creditors have been omitted. Normally the debt omitted will not be discharged, and therefore, the bankrupt has little to gain by failing to list it. 1 Collier, Bankruptcy ¶ 14.28; 7 Remington, Bankruptcy § 3093; Annot., 59 A.L.R.2d at 822 et seq.

These principles, however, have no application here, for this is not a per se case. The failure to list Steiker Industries was not in itself the basis for upholding the second specification. The referee tied the omission of Steiker Industries as a creditor to the bankrupt's false oath regarding employment. He found that "his [the bankrupt's] failure to record it [the debt to Steiker Industries] * * * was consistent with his method of receipt of money so that his judgment creditors could not reach his income." The record fully supports his conclusion.

The judgment of the district court will be affirmed.

---

3. It is clear that there is a very direct relationship between the findings of "materiality" and "fraudulent intent." Since fraud is seldom admitted, it must be proved circumstantially from the conduct of the bankrupt. Because of this, false oaths relating to trivial matters frequently operate to show an absence of fraudulent intent. Cf., Hanover-Capital Trust Co. v. Meyer, 57 F.2d 815 (C.A.3, 1932).

4. Several cases have held that the false oath need not be harmful to creditors to justify the denial of a discharge. The cases are collected in 59 A.L.R.2d at 832. We are not required to decide the validity of this principle since the creditors here were harmed by the bankrupt's misrepresentation.