Charles T. SCIMECA, Appellant,

v.

Daniel UMANOFF, Appellee.

Civ. A. No. 93–3907 (AJL).

United States District Court,
D. New Jersey.

Nov. 9, 1993.

---

Bruce H. Levitt, Mudge Rose Guthrie Alexander & Ferndon, Parsippany, NJ, for appellant.

James B. Brown, Jr., Shore & Zahn, East Brunswick, NJ, for appellee.

## OPINION

LECHNER, District Judge.

Daniel Umanoff ("Umanoff") filed an adversary proceeding before the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), objecting to the discharge of the debts of debtor Charles T. Scimeca ("Scimeca") under 11 U.S.C. §§ 523(a)(4) and 727(a)(2) and (a)(4).

Currently before the court is the appeal by Scimeca of the opinion and order of the Bankruptcy Court, filed 14 July 1993 (the "14 July Opinion and Order"), sustaining Umanoff's objection and denying Scimeca discharge under 11 U.S.C. §§ 727(a)(2) and (a)(4).[1] Jurisdiction appears appropriate

---

1. In support of his appeal, Scimeca has submitted: Brief of Appellant (the "Scimeca Brief"); Reply Brief of Appellant (the "Scimeca Reply Brief").

In opposition to Scimeca's appeal, Umanoff has submitted: Brief of Appellee (the "Umanoff Brief").

Also included in the record on appeal are: 14 July Opinion and Order; complaint, filed 23 August 1991 (the "Complaint"); Answer, filed 21 October 1991 (the "Answer"); Notice of Motion to Amend Complaint (the "Motion to Amend"); order of Bankruptcy Court, dated 11 January 1993, denying Motion to Amend (the "11 Jan. Order"); Defendant's Proposed Findings of Fact, Conclusions of Law and Trial Brief (the "Scimeca Trial Brief"); Trial Memorandum of Plaintiff (the "Umanoff Trial Brief"); Defendant's Supplemental Trial Brief (the "Scimeca Supp. Trial Brief"); Letter Memorandum of Plaintiff, dated 5 March 1993 (the "Umanoff Supp. Brief"); Defendant's First Set of Interrogatories (the

pursuant to 28 U.S.C. § 158(a). For the reasons set forth below, the 14 July Opinion and Order is affirmed.

*Facts*

Beginning in 1978, Scimeca owned and operated an advertising business known as Century Media Corporation ("Century").[2] 14 July Opinion and Order at 2. On 21 March 1989, Umanoff loaned Century the sum of $300,000.00 payable at an annual interest rate of twenty percent (the "Note"). *Id.* The Note was personally guaranteed by Scimeca and Victoria Scimeca. *Id.*

On 21 March 1990, Century made an interest payment on the Note in the amount of $60,000.00. *Id.* at 3. In or about February 1991, shortly before the second interest payment was due, Century ceased to do business.[3] It appears Century has failed to make any further interest payments or payments on the Note's principal to date. *See Id.*

On 3 April 1991, Scimeca filed a voluntary petition (the "Petition") for relief under chapter 7 of the United States Bankruptcy Code ("Chapter 7"), 11 U.S.C. §§ 701 *et seq.*[4] 14 July Order at 2.

Along with the Petition, Scimeca was required to complete certain schedules of financial information (the "Schedules"), as well as a Statement of Financial Affairs for Debtor Not Engaged in Business (the "Statement of Financial Affairs"). Schedule B–2 to the Pe-

tition ("Schedule B–2") requires that a debtor list all personal property as of the date of filing. *See* Petition, Schedule B–2. Among the information required by Schedule B–2 is: "Stock and interest in incorporated and unincorporated companies (itemize separately)." *Id.* at item 't' ("Item 't' "). In filing the Petition, Scimeca left Item 't' blank, and failed to refer to his interest in Century anywhere in Schedule B–2. *See* Petition, Schedule B–2, Item 't.' Indeed, Century is not mentioned at all in the Petition or the Schedules. *See id.* On the final page of the Schedules, Scimeca put his signature beneath the declaration: "I, Charles T. Scimeca, declare under penalty of perjury that I have read the foregoing schedules, ... and that they are true and correct to the best of my knowledge, information and belief." Petition.

It appears the only mention of Century made by Scimeca in the forms accompanying the Petition is in the Statement of Financial Affairs. Question 2d within the Statement of Financial Affairs asks:

Have you been in a partnership with anyone, or engaged in any business during the six years immediately preceding the filing of the original petition herein? (If so, give particulars, including names, dates and places.)

Statement of Financial Affairs. In response to this question, Scimeca gave the name and address of Century, and the dates: "1978–1991." *Id.* No further information as to the

---

"Scimeca Interrogatories"); Plaintiffs Answer to Scimeca Interrogatories (the "Umanoff Answer to Interrogatories").

The record on appeal submitted by the parties was somewhat incomplete. Considerable time and effort were expended in retrieving documents referred to by the parties in their briefs and by the Bankruptcy Court in the 14 July Opinion and Order, but not included in the record by the parties. Among these documents were the Voluntary Petition of Scimeca for Relief under Bankruptcy Code and the Statement of Financial Affairs of Debtor.

Oral argument was held before the Bankruptcy Court on 28 December 1992, 28 January 1993 and 26 February 1993. References to these proceedings will be referred to as: "28 Dec. Tr. at ___," "28 Jan. Tr. at ___" and "26 Feb. Tr. at ___."

**2.** Century is not and has never been a debtor involved in a bankruptcy proceeding. *See* 14 July Opinion and Order at 3 n. 1.

**3.** It appears Century had not been liquidated as of the time of the proceedings before the Bankruptcy Court. *See* 28 Jan. Tr. at 42. It also appears that at the time of the commencement of the bankruptcy proceedings, Century was the plaintiff in a state court action in which it sought $3,000,000.00. *See* 26 Feb. Tr. at 61; 28 Dec. Tr. at 5–6.

**4.** It appears that subsequent to the filing of the Petition, Umanoff filed an action against Scimeca, Century and Victoria Scimeca in the Superior Court for the State of New Jersey, for default under the Note. *See* 14 July Opinion and Order at 3. The exact date the state court action was filed is not clear. It appears the state court action was stayed with respect to Scimeca pursuant to 11 U.S.C. § 362. *Id.* Century failed to file an answer and default was entered against it. Victoria Scimeca filed an answer on 10 July 1992. *Id.*

"particulars" of Scimeca's interest in Century was provided. *Id.* On the final page of the Statement of Financial Affairs, Scimeca put his signature to the declaration: "I, Charles T. Scimeca, declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and that they are true and correct to the best of my knowledge, information and belief." *Id.*

Question 12b within the Statement of Financial Affairs asks:

Have you made any other transfer, absolute or for the purpose of security, or any other disposition of real or personal property during the year immediately preceding the filing of the original petition herein?

Statement of Financial Affairs. In response to this question, Scimeca answered: "No." *Id.*

On 23 August 1991, Umanoff filed an adversary proceeding objecting to the discharge, pursuant to 11 U.S.C. § 523, of Scimeca's obligations under the Note, and to Scimeca's global discharge under 11 U.S.C. § 727. The Complaint alleged Scimeca "caused, aided and assisted in the secret transfer of assets of Century Media Corporation without fair consideration to a party related to [Scimeca]." Complaint, ¶ 5C. The Complaint further alleged this transfer "was intended to and did deprive [Umanoff] of a source of repayment of his loan, and constituted a fraud by [Scimeca] against [Umanoff]." *Id.*, ¶ 5D. As a first cause of action, the Complaint alleged the transfer of assets barred discharge of Scimeca's obligations un-

der the Note pursuant to 11 U.S.C. § 523(a)(4) ("Count One").[5] *Id.*, ¶ 6.

With respect to Umanoff's second cause of action ("Count Two"), the Complaint alleged the transfers of assets from Century were breaches of Scimeca's fiduciary duty to Century, and gave rise to a right on the part of Century to recapture the transferred assets. *Id.*, ¶ 9. The Complaint also alleged Scimeca, "through his [S]chedules, failed to disclose his interest in [Century], denying the [bankruptcy trustee] knowledge of said asset and of the corporation's right to recapture improvidently dissipated assets...." *Id.*, ¶ 11. Count Two alleged Scimeca's failure to disclose this interest barred discharge of Scimeca's debts pursuant to 11 U.S.C. §§ 727(a)(2)(A) and (a)(4)(A).[6] *Id.*, ¶ 12.

On 28 December 1992, Scimeca moved before the Bankruptcy Court to dismiss the Complaint, and Umanoff cross-moved for leave to amend the Complaint. *See* 28 Dec. Tr. at 2; Motion to Amend. Umanoff sought to amend the Complaint to include allegations of "numerous other pre[-]petition transfers involving the debtor."[7] Scimeca Brief at 3. By Order, dated 11 January 1993, the Bankruptcy Court denied the motion to dismiss and the Motion to Amend. *See* 11 Jan. Order; 28 Dec. Tr. at 29.

Trial before the Bankruptcy Court began 28 January 1993 and was reconvened and concluded 26 February 1993. Over the course of the proceedings, the Bankruptcy Court heard testimony from Scimeca and Victoria Scimeca. Scimeca testified that at the time Century ceased operations, it had $533,758.15 in accounts receivables. *See* 28

---

5. Section 523(a)(4) provides:

 (a) A discharge ... does not discharge an individual debtor from any debt—

 . . . . .

 (4) for fraud, defalcation while acting in a fiduciary capacity, embezzlement, or larceny....

11 U.S.C. § 523(a)(4).

6. Sections 727(a)(2)(A) and (a)(4)(A) provide, in full:

 (a) The court shall grant the debtor a discharge, unless—

 . . . . .

 (2) the debtor, with the intent to hinder, delay or defraud a creditor or an officer of the

estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed

 . . . . .

 (A) property of the debtor, within one year before the filing of the petition; or

 . . . . .

 (4) the debtor, knowingly and fraudulently, in or in connection with the case—
 (A) made a false oath or account; ....

7. The specific text of the proposed amendments are not clear because the proposed amended complaint was not included in the record on appeal, and was not found in any of the Bankruptcy Court's files.

Jan. Tr. at 50; 14 July Op. and Order at 4. Scimeca testified, however, that only five percent of the listed accounts receivable could be considered net income of Century. *See* 28 Jan. Tr. at 52–60; 14 July Op. and Order at 4. Scimeca therefore explained the actual net receivables of Century at the time it ceased operations were between $25,000.00 and $30,000.00. *See* 28 Jan Tr. at 61; 14 July Op. and Order at 4.

Scimeca further testified that in or about February or March 1991, around the time Century ceased to do business, he became employed by a company known as National Communications ("National"). *See* 28 Jan Tr. at 57; 14 July Op. and Order at 5. Scimeca testified Victoria Scimeca was the sole stockholder of National, and had contributed all of the corporation's capital.[8] *See* 28 Jan.Tr. at 57, 84; 14 July Op. and Order at 5. Scimeca stated he held the position of chairman of the board of directors of National and performed substantially the same functions as he did when employed by Century. *See* 28 Jan Tr. at 58; 14 July Op. and Order at 5. Scimeca further stated that by the end of 1991, he was drawing a salary from National at the rate of about $70,000 per year. *See* 28 Jan. Tr. at 83–84; 14 July Op. and Order at 5 n. 5.

Victoria Scimeca testified that she formed National as its sole stockholder in February 1991. *See* 28 Jan Tr. at 104; 14 July Op. and Order at 6. She indicated that it was Scimeca's decision to form National. *See* 26 Feb. Tr. at 8; 14 July Op. and Order at 6 n. 6. Victoria Scimeca stated the corporation's initial capitalization was $7,500.00, and had come "mostly" from her personal savings. *See* 28 Jan.Tr. at 105; 14 July Op. and Order at 6. She testified that by May or June 1991, National's total capital had risen to $50,000.

*See id.* at 106. Victoria Scimeca testified that of this $50,000, approximately five percent "came from either money provided by . . . Scimeca or money that both [she] and he had an interest in." 26 Feb. tr. at 9. However, Victoria Scimeca later confirmed her deposition testimony that "[s]omewhere between [$]35,000 and [$]50,000 was put into the company . . . [by] Charles [Scimeca] and myself, jointly."[9] 26 Feb.Tr. at 12.

Victoria Scimeca denied receiving funds from Scimeca in January 1991. *See* 26 Feb. Tr. at 16; 14 July Op. and Order at 7. However, when confronted with a bank statement, she admitted that on 9 January 1991, a deposit in the amount of $68,201 was made into her account. She further admitted that the source of the deposit was Scimeca's liquidation of an Individual Retirement Account ("IRA") held in his name. *See* 26 Feb.Tr. at 18–19; 14 July Op. and Order at 7. Victoria Scimeca further testified that Scimeca liquidated another IRA in the approximate amount of $163,000.00 in October 1990. *See* 26 Feb.Tr. at 28–29; 14 July Op. and Order at 7.

At the conclusion of Umanoff's case-in-chief, Scimeca requested judgment in his favor. *See* 14 July Op. and Order at 8. The Bankruptcy Court granted judgment in favor of Scimeca with respect to Count One of the Complaint, but denied Scimeca's motion with respect to Count Two. *See* 14 July Op. and Order at 8. After this decision, Scimeca rested his case without offering any testimony. *See* 26 Feb.Tr. at 45; 14 July Op. and Order at 8.

During summations, Scimeca objected to consideration of his liquidation of the IRAs, because allegations of these liquidations had not been included in the Complaint. 26 Feb. Tr. at 70. The Bankruptcy Court reserved

---

**8.** Scimeca testified the initial capitalization of National was approximately $20,000, and came from Victoria Scimeca's savings. *See* 28 Jan.Tr. at 73; 14 July Op. and Order at 5. Victoria Scimeca put this figure at $7,500.00, and stated that the initial capital came "mostly" from her savings. *See* 28 Jan.Tr. at 105. Victoria Scimeca was unable to confirm or deny that she and her husband had any joint savings accounts. *Id.*

**9.** It appears at least some of the capital of National which existed in May to June 1991 came

either from the joint assets of Scimeca and Victoria Scimeca or from the assets of Scimeca. It is unclear, however, exactly when the capital contributions from Scimeca took place. It appears Scimeca did not contribute to the initial capitalization of National in February 1991. *See* 28 Jan.Tr. at 105. It is therefore unclear whether Scimeca had contributed to National's capitalization before the filing of the Petition on 3 April 1991.

decision on the objection, and gave the parties ten days to submit additional briefs on the issue. *See id.* at 80.

By way of the 14 July Opinion and Order, the Bankruptcy Court rendered decision in favor of Umanoff on Count Two of the Complaint. Addressing the aspect of Count Two based on 11 U.S.C. § 727(a)(2)(A), the Bankruptcy Court held that Scimeca's actions in transferring assets barred global discharge of his debts under that section. The Bankruptcy Court detailed several factors in setting forth the "web of deception used by [Scimeca] to hide his assets." 14 July Op. and Order at 13.

First, the Bankruptcy Court noted that Scimeca's "sole reference to his ownership interest in Century Media appears on his Statement of Financial Affairs and there is absolutely no mention of the company as an asset on [Scimeca's] bankruptcy [S]chedules." 14 July Op. and Order at 12. The Bankruptcy Court noted that although Scimeca provided Century's name and address in his Statement of Financial Affairs, "no further information was offered with regard to [Scimeca's] title at the Company, and his earnings and the value of his interest." *Id.* at 12. The Bankruptcy Court concluded that Scimeca's failure to state the magnitude of his interest "indicates an intent on the part of [Scimeca] to purposefully frustrate and hinder the efforts of creditors and the trustee to determine the exact nature of [Scimeca's] interest." *Id.* at 13.

The Bankruptcy Court next considered the use of joint assets of Scimeca and Victoria Scimeca in the formation of National. The Bankruptcy Court determined that "the use of joint assets to form National was merely a transfer of assets from [Scimeca] to [Victoria] Scimeca...." *Id.* The Bankruptcy Court further pointed out that "it was [Scimeca's] decision to form [National], and that he had directed [Victoria] Scimeca to form National solely in her name." *Id.* In light of these facts, the Bankruptcy Court concluded the transfer "should have been clearly noted on [Scimeca's] [P]etition." *Id.*

The Bankruptcy Court next considered the liquidations of Scimeca's IRAs. The Bankruptcy Court determined that "[t]hese IRA liquidations represent substantial transfers of [Scimeca's] assets, of which the creditors and the trustee should have been aware." *Id.* at 14.

The Bankruptcy Court concluded that "all of the above facts, as well as the overall taint of this case, clearly evidence an attempt on the part of [Scimeca] to frustrate and hinder the efforts of the trustee and creditors to assess the true net worth of [Scimeca]." *Id.* Having found that the elements for denial of discharge under section 727(a)(2) had been satisfied, the Bankruptcy Court denied discharge under that provision. *Id.*

The Bankruptcy Court went on to determine that discharge of Scimeca's debts should also be denied under section 727(a)(4)(A). Referring to its determinations with respect to section 727(a)(2), the Bankruptcy court stated:

> As discussed above, in the case at bar, the debtor has either omitted or falsely stated several pieces of information on his bankruptcy [S]chedules and Statement of Financial Affairs. The filing of a bankruptcy petition requires a frank, thorough and exhaustive disclosure of all the debtor[']s assets and liabilities on the bankruptcy petition.... Thus, based upon [Scimeca's] lack of honesty and what appears to be intentional vagueness in the filing of his bankruptcy petition, the court finds that [Scimeca] knowingly and fraudulently made a false oath or account as to the truthfulness of his assets and financial history and accordingly, his discharge is also denied pursuant to § 727(a)(4)(A).

*Id.* at 16–17.

Scimeca's Notice of Appeal was filed 26 July 1993. Scimeca's principal argument on appeal is that the Bankruptcy Court erred in considering the IRA liquidations in denying discharge under section 727(a)(2)(A). *See* Scimeca Brief at 10. Scimeca further argues the Bankruptcy Court's denial of discharge under section 727(a)(4)(A) also constituted reversible error. *See id.* at 14.

*Discussion*

A. *Standard of Review of Determination of Bankruptcy Court*

■ The proper standard of review to be applied by a district court when reviewing

a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal. The factual determinations of the bankruptcy court are to be given conclusive effect unless they are "clearly erroneous." *See J.P. Fyfe, Inc. v. Bradco Supply Corp.,* 891 F.2d 66, 69 (3d Cir.1989); *In re Morrissey,* 717 F.2d 100, 104 (3d Cir.1983); *Mellon Bank v. Makoroff,* 153 B.R. 155, 157 (W.D.Pa.1993); *In re Continental Airlines,* 150 B.R. 334, 336 (D.Del.1993). Legal conclusions of the bankruptcy court, on the other hand, are to be accorded no deference and are subject to *de novo* or plenary review by the district court. *See J.P. Fyfe,* 891 F.2d at 69; *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988); *Mellon Bank,* 153 B.R. at 157; *Continental Airlines,* 150 B.R. at 336. Exercises of discretion by the bankruptcy court are to be given conclusive effect unless such an exercise constitutes an abuse of discretion. *See In re Vertientes, Ltd.,* 845 F.2d 57, 59 (3d Cir.1988).

### B. *Denial of Discharge under Section 727(a)(4)(A)*

 Section 727(a)(4)(A) [10] "imposes affirmative duties upon a debtor to disclose the existence of all assets and his ownership interest in property and to answer all questions fully and honestly for the benefit of his [or her] creditors and other parties with an interest ... in the debtor's bankruptcy case who are entitled to a 'truthful statement of the debtor's financial condition.'" *In re Henderson,* 134 B.R. 147, 159 (Bankr.E.D.Pa. 1991); *see In re Arcuri,* 116 B.R. 873, 879–80 (Bankr.S.D.N.Y.1990); *In re Tarle,* 87 B.R. 376, 379 (Bankr.W.D.Pa.1988). A plaintiff objecting to a debtor's discharge under section 727(a)(4)(A) must prove two elements: (1) the debtor knowingly and fraudulently made a false oath; and (2) the false oath related to a material fact. *See In re Kisberg,* 150 B.R. 354, 356 (Bankr.M.D.Pa.1992); *In re Henderson,* 134 B.R. at 159; *In re Ward,* 92 B.R. 644, 647 (Bankr.W.D.Pa.1988); *In re*

*Tarle,* 87 B.R. at 379; *In re Roberts,* 81 B.R. 354, 381 (W.D.Pa.1987).

 Facts supporting this cause of action, involving as it does allegations of fraud, must be established by clear and convincing evidence. *See Meridian Bank v. Alten,* 1991 WL 333927 at *5 (D.N.J. 28 Mar.1991), *aff'd,* 958 F.2d 1226 (3d Cir.1992); *In re Arcuri,* 116 B.R. at 878; *In re Garcia,* 88 B.R. 695, 700 (Bankr.E.D.Pa.1988); *In re Somerville,* 73 B.R. 826, 835 (Bankr.E.D.Pa.1987). Of course, the initial burden of proof rests with the party objecting to discharge, "but once it reasonably appears that the oath is false, the burden falls upon the bankrupt to come forward with evidence that he [or she] has not committed the offense charged." *In re Tully,* 818 F.2d 106, 110 (1st Cir.1987); *see In re Kisberg,* 150 B.R. at 354.

 With respect to the first element, "a false oath may be enough to sustain a denial of discharge when: (1) the false statement or omission occurs in the debtor's schedules,[11] or (2) the false statement was made by the debtor at an examination during the course of the proceedings." *In re Tarle,* 87 B.R. at 379 (citing 4 Collier on Bankruptcy 727.04, 727–59 (15th ed.)); *see Matter of Bobroff,* 69 B.R. 295, 297 (E.D.Pa.1987) ("It is well established that a debtor's declaration that his schedule of property is 'true and correct' constitutes an adequate ground for disallowal of discharge where the debtor has knowingly and fraudulently omitted assets from the schedule."); *In re Roberts,* 81 B.R. at 381; *In re Schultz,* 71 B.R. 711, 717 (Bankr.E.D.Pa.1987); *In re Salamone,* 62 B.R. 690, 692 (Bankr.E.D.Pa.1986), *rev'd on other other grounds,* 71 B.R. 69 (E.D.Pa. 1987). A false statement or omission in a debtor's Statement of Financial Affairs may also support a denial of discharge under section 727(a)(4)(A). *See In re Roberts,* 81 B.R. at 381; *In re Somerville,* 73 B.R. 826, 835 (Bankr.E.D.Pa.1987).

 Also with respect to the first element, "fraudulent intent can be established

---

**10.** The text of section 727(a)(4)(A) is set forth at note 6, *supra.*

**11.** The schedules accompanying a debtor's bankruptcy petition are concluded with the statement: "I, *[debtor]*, declare under penalty of perjury that

I have read the foregoing schedules, consisting of *[number]* sheets, and that they are true and correct to the best of my knowledge, information and belief." Petition; *see In re Tarle,* 87 B.R. at 379 n. 4.

by circumstantial evidence or by inferences drawn from a course of conduct as established by the evidence." *In re Kisberg,* 150 B.R. at 356; *see Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 252 (4th Cir. 1987); *In re Devers,* 759 F.2d 751, 754 (9th Cir.1985); *In re Braidis,* 27 B.R. 470, 472 (Bankr.E.D.Pa.1983). "[O]mission of assets resulting from the debtor's reckless disregard for the truth is equivalent to fraud under section 727(a)(4)(A)." *In re Henderson,* 134 B.R. at 159; *see In re Tully,* 818 F.2d at 111; *In re Kaiser,* 722 F.2d 1574, 1583 (2d Cir.1983); *In re Steiker,* 380 F.2d 765, 768 (3d Cir.1967).

■ While fraudulent intent of the debtor is required for a denial of discharge under section 727(a)(2)(A), extreme carelessness of the debtor in filling out the Petition will not excuse a false oath. Discharge may be denied "to debtors who have claimed that they did not read the [bankruptcy] schedules prior to signing, and therefore did not know they were making a false oath." *In re Ward,* 92 B.R. at 647; *see In re Tully,* 818 F.2d at 111; *In re Johnson,* 82 B.R. 801, 806 (Bankr. E.D.N.C.1988). "[A] debtor cannot, merely by playing ostrich and burying his [or her] head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *In re Tully,* 818 F.2d at 111; *see In re Johnson,* 82 B.R. at 806.

■ As stated, "[n]ot only must the oath or statement be knowingly and fraudulently made, but it must be material to the course of the bankruptcy case." *In re Henderson,* 134 B.R. at 160. "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his [or her] property." *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984); *see In re Calder,* 907 F.2d 953, 955 (10th Cir.1990); *In re Steiker,* 380 F.2d at 768; *In re Henderson,* 134 B.R. at 160.

■ In order for a falsehood or omission to be material, it need not result in detriment to creditors. *See In re Chalik,* 748 F.2d at 618; *Farmers Co–Operative Association v.*

*Strunk,* 671 F.2d 391, 396 (10th Cir.1982); *In re Arcuri,* 116 B.R. at 881; *In re Tarle,* 87 B.R. at 376. The debtor must make full disclosure, "even of seemingly worthless assets."[12] *In re Arcuri,* 116 B.R. at 881; *see In re Chalik,* 748 F.2d at 618 ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding."); *In re Mascolo,* 505 F.2d 274, 278 (1st Cir.1974) ("[K]nowing and fraudulent omissions of a bank account, whether or not it is closed at the time of filing, warrants the denial of discharge.").

■ The debtor's "failure to reveal the existence or recent existence of a business would prevent creditor's from having the opportunity to investigate the debtor's financial condition." *In re Somerville,* 73 B.R. at 837. Accordingly, such failure would be a material false oath justifying denial of discharge under section 727(a)(4)(A). *Id.*

"Whether a debtor has made a false oath within the meaning of [section] 727(a)(4)(A) is a question of fact." *Williamson,* 828 F.2d at 251; *see In re Roe,* 146 F.2d 266, 267 (3d Cir.1944) ("Whether the bankrupt was guilty of conscious falsification is a question of fact."); *In re Arcuri,* 116 B.R. at 880; *In re Bernard,* 99 B.R. 563, 570 (Bankr.S.D.N.Y. 1989). Accordingly, the bankruptcy court's findings with respect to this issue may not be set aside unless clearly erroneous. *See Williamson,* 828 F.2d at 251; *In re Roe,* 146 F.2d at 267; *Meridian Bank,* 1991 WL 333927 at \*3; *In re Salamone,* 71 B.R. 69, 70 (E.D.Pa.1987); *Matter of Bobroff,* 69 B.R. at 297. As suggested, however, any legal determinations of the bankruptcy court made in the course of denying discharge will be subject to plenary review by the district court. *See J.P. Fyfe,* 891 F.2d at 69.

■ Turning to the facts at bar, it does not appear the Bankruptcy Court's decision to deny discharge to Scimeca under section 727(a)(4)(A) constitutes reversible error. It is undisputed, and appears indisputable, that Scimeca failed to list his interest in Century at Item 't', or anywhere in his Schedules. *See* Petition. Scimeca also failed to disclose

---

**12.** It should be noted, however, that "[i]f the false oath pertains to an asset of *de minimis* value, ... this may tend to vitiate the debtor's fraudulent intent." *In re Arcuri,* 116 B.R. at 881.

in his Statement of Financial Affairs the extent of his interest in Century, in spite of the fact he was the sole stockholder and chief executive of the corporation.[13] *See* Statement of Financial Affairs. These omissions constitute "false oaths" under section 727(a)(4)(A), and would justify discharge if they were made with fraudulent intent and were material to the bankruptcy proceedings. *See In re Tarle,* 87 B.R. at 379; *In re Roberts,* 81 B.R. at 381.

The Bankruptcy Court determined these omissions were in fact "knowingly and fraudulently made...." 14 July Op. and Order at 17. The Bankruptcy court found that these omissions were motivated by Scimeca's "lack of honesty and what appears to be intentional vagueness in the filing of his bankruptcy petition." *Id.* Moreover, the Bankruptcy Court relied on what it referred to as "the

overall taint of the case." *Id.* at 14. Factual determinations based on the "taint" of a case or the witness' lack of honesty in his or her behavior and demeanor are uniquely within the province of the fact-finder. Such determinations should generally not be disturbed on appeal. It appears the Bankruptcy Court permissibly inferred Scimeca's fraudulent intent from the facts surrounding the case.[14] *See Williamson,* 828 F.2d at 252. Scimeca has offered no arguments sufficient to controvert this inference.[15] He does not assert his omissions were the result of oversight. In any event, such an assertion would be insufficient to render the Bankruptcy Court's finding of fraudulent intent clearly erroneous. *See In re Tully,* 818 F.2d at 111.

It is even more apparent that Scimeca's omissions were material for the purposes of section 727(a)(4)(A). Scimeca owned a 100%

---

**13.** Scimeca argues that "nowhere in the Statement of Financial Affairs is such information requested." Scimeca Brief at 17. Scimeca apparently neglects that the Statement of Financial Affairs required him to "give particulars" with respect to his or his interest in Century. Statement of Financial Affairs. According to the Statement of Financial Affairs, such "particulars" may include "names, dates and places," but the requested "particulars" are not necessarily limited to such information. *Id.* Under section 727(a)(4)(A), "[a] debtor has an affirmative duty to identify all assets, liabilities and to answer all questions *fully and with the utmost candor.*" *In re Arcuri,* 116 B.R. at 879 (emphasis added); *see id.* at 880 ("[C]omplete disclosure is essential to the proper administration of the Bankruptcy case.").

In light of Scimeca's extensive interest in Century, the Bankruptcy Court was correct in finding it "particularly astounding that no further information was offered with regard to the debtor's title at the company, his earnings and the value of his interest." 14 July Op. and Order at 12.

**14.** Scimeca argues the lack of Scimeca's testimony as to his intent precludes a finding that he had fraudulent intent. *See* Scimeca Reply Brief at 4. Scimeca cites *Rosen v. Bezner,* 996 F.2d 1527 (3d Cir.1993) for this proposition. *See id.*

From the outset, it should be noted that the Third Circuit's decision in *Rosen* concerned a denial of discharge under section 727(a)(2)(A), not a denial under section 727(a)(4)(A). *See* 996 F.2d at 1529. Moreover, to the extent the decision in *Rosen* is applicable to the review of a denial under section 727(a)(4)(A), it fully supports the proposition that deceptive intent may be inferred from the debtor's conduct and other

circumstances surrounding a case. The Circuit stated:

> In many and perhaps most cases, the circumstances surrounding the concealment and the very fact that the debtor has created and retained a secret interest will be sufficient to hold as a matter of law that the debtor's intent in continuing the concealment was to hinder creditors.

*Rosen,* 996 F.2d at 1533.

**15.** Scimeca asserts he did not disclose his interest in Century because the corporation "had a negative net worth." Scimeca Brief at 14. It is acknowledged that "if the false oath pertains to an asset of *de minimis* value, ... this may tend to vitiate the debtor's fraudulent intent." *In re Arcuri,* 116 B.R. at 881. It appears, however, that at the time of the filing of the Petition, Century "had a $3 million malpractice case going...." 28 Dec.Tr. at 4–5. This fact would obviously be of great interest to Century's creditors, and thus does not concern an item of *de minimis* value.

Moreover, as the Bankruptcy Court noted:
> If the reason [Scimeca] chose not to indicate his ownership interest in Century Media on the bankruptcy [S]chedules was because it had a negative net worth, then common sense would suggest that the debtor indicate such a position so that a proper determination of the debtor's worthiness for bankruptcy protection could be ascertained by creditors and the trustee.

14 July Op. and Order at 12. It appears, therefore, that the Bankruptcy court considered the worth of Century, and made a reasonable factual determination as to the value and weight of that evidence. Based on the Bankruptcy Court's evaluation of the evidence before it, its determination that Scimeca had fraudulent intent was not clearly erroneous.

interest in a business, and failed to disclose this fact anywhere in his Schedules or Statement of Financial Affairs; he did not even disclose the existence of Century in his Schedules. "[N]othing could be more material to a bankruptcy case than concealment of [the existence or recent existence of] a business, since this would prevent creditors from having an opportunity to investigate the debtor's financial condition and prevent the trustee from evaluating avoidable transfers." *In re Somerville,* 73 B.R. at 837; *see also In re Chalik,* 748 F.2d at 618 (information related to "bankrupt's business transactions or ... business dealings" is material).

It is of no consequence that Century was of questionable net worth at the time Scimeca filed the Petition. Section 727(a)(4)(A) requires the disclosure "even of seemingly worthless assets." *In re Arcuri,* 116 B.R. at 881; *see In re Chalik,* 748 F.2d at 618. Moreover, it appears that at the time the Petition was filed, Century was involved in a law suit in which it sought $3 million. *See* 28

Dec.Tr. at 4–5. This information is certainly material, for it would have been of great interest to Scimeca's creditors in tracking Scimeca's assets.[16] *See In re Chalik,* 748 F.2d at 618.

In light of the foregoing, the Bankruptcy Court's determination that Scimeca had made a false oath within the meaning of section 727(a)(4)(A) was adequately supported by the evidence and was not clearly erroneous. Accordingly, the Bankruptcy Court's denial of discharge to Scimeca pursuant to section 727(a)(4)(A) is affirmed.[17] *See Williamson,* 828 F.2d at 251.

*Conclusion*

For the reasons stated, the 14 July Opinion and Order of the Bankruptcy Court is affirmed.

---

16. Because Scimeca's failure to properly disclose his interest in Century is sufficient to support denial of his discharge under section 727(a)(4)(A), it is unnecessary to reach Scimeca's argument that his transfers of assets should not have been considered by the Bankruptcy Court. In any event, it appears the Bankruptcy Court's decision under section 727(a)(4)(A) was predicated primarily on Scimeca's failure to disclose his interest in Century, and not on his undisclosed transfers of assets. *See* 14 July Op. and Order at 16.

Scimeca argues that the Bankruptcy court acknowledged that Scimeca's failure to disclose his interest in Century was insufficient to justify denial of discharge. *See* Scimeca Brief at 17. The Bankruptcy Court did state that this failure to disclose was insufficient to deny Scimeca discharge under section 727(a)(2)(A), but it did not make such a statement with respect to its denial under section 727(a)(4)(A). *Compare* 14 July Op. and Order at 13 *with id.* at 16. As stated, it appears that in its denial under section 727(a)(4)(A), the Bankruptcy Court relied primarily on Scimeca's failure to adequately disclose his interest in Century on his Schedules and Statement of Financial Affairs. *See id.* at 13. Also as stated, these omissions are sufficient to sustain the Bankruptcy Court's denial of discharge under section 727(a)(4)(A).

17. Because the Bankruptcy Court's denial of discharge to Scimeca is sustained under section 727(a)(4)(A), it is not necessary to address Scimeca's argument that discharge should not have been denied under section 727(a)(2)(A).

Moreover, Scimeca's principal argument with respect to section 727(a)(2)(A), that the Bankruptcy Court's consideration of Scimeca's liquidation of his IRAs constituted an impermissible amendment of the Complaint, is of doubtful validity. It is well-established that under Fed. R.Civ.P. 15(a), absent exceptional circumstances, leave to amend pleadings "should, as the rules require, require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (quoting Fed.R.Civ.P. 15(a)); *Bechtel v. Robinson,* 886 F.2d 644, 652 (3d Cir. 1989) ("The Third Circuit has "shown a strong liberality in allowing amendments under Rule 15(a)."). Indeed, the equities of the instant situation suggest such an amendment would have been appropriate. In light of the earlier Motion to Amend and the testimony at trial, Scimeca was certainly on notice that the IRA liquidations could become an issue in the bankruptcy proceedings.

Scimeca argues the Bankruptcy Court's 11 January Order, denying the Motion to Amend, precluded subsequent amendment of the pleadings as the "law of the case." *See* Scimeca Brief at 8. It should be noted, however, that "law of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). Accordingly, the Bankruptcy Court would have had the power, within the limits of its sound discretion, to revisit its decision in the 11 January Order, and allow subsequent amendment of the pleadings. *Id.* In any event, there was no reason to preclude evidence of Scimeca's liquidation of his IRAs.